Christopher Sproul (State Bar No. 126398)
Jodene Isaacs (State Bar No. 226895)
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376, (510) 847-3467
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com
Email:  jisaacs@enviroadvocates.com

Michael A. Costa (State Bar No. 219416)
3848 Sacramento St. #2
San Francisco, CA 94118
Telephone: (415) 342-0042
Email: mike@ocefoundation.org

*Attorneys for Plaintiffs*

SAM HIRSCH
Acting Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

ETHAN CARSON EDDY, Trial Attorney
Wildlife and Marine Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 305-0202
Facsimile: (202) 305-0275
Email: ethan.eddy@usdoj.gov

JOHN THOMAS H. DO, Trial Attorney
Environmental Defense Section
P.O. Box 7611, Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 514-2593
Facsimile: (202) 514-8865
Email: john.do@usdoj.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OUR CHILDREN'S EARTH FOUNDATION and ECOLOGICAL RIGHTS FOUNDATION,<br><br>　　　　　　　　Plaintiffs,<br>　　v.<br>U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,<br>　　　　　　　　Defendants. | Case No.  3:13-cv-2857-JSW<br><br>**CONSENT DECREE** |

WHEREAS, Plaintiffs Our Children's Earth Foundation and Ecological Rights Foundation ("Plaintiffs") filed their Complaint on June 20, 2013 pursuant to Section 505(a)(2) of the Clean Water Act ("CWA"), 33 U.S.C. § 1365(a)(2), Section 11(g) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g)(1)(A), and Section 706(1) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), against the U.S. Environmental Protection Agency ("EPA"), the U.S. Fish and Wildlife Service, and the National Marine Fisheries Service (together "the Services"), and certain federal officials of all three agencies;

WHEREAS, the Complaint alleges claims related to the EPA-promulgated Final California Toxics Rule, 65 Fed. Reg. 31,682 (May 18, 2000) ("2000 Final CTR") and associated March 24, 2000, ESA biological opinion;

WHEREAS, the Complaint includes six claims alleging specifically that (1) EPA failed to perform a non-discretionary duty to set water quality criteria for selenium and mercury for the State of California as required by CWA Section 303(c)(4), 33 U.S.C. § 1313(c)(4); (2) EPA violated ESA Section 9, 16 U.S.C. § 1538(a)(1)(B), by failing to adopt certain CWA Section 303(c) criteria for selenium, mercury, pentachlorophenol ("PCP"), cadmium and dissolved metals as envisioned in the ESA biological opinion; (3) EPA violated ESA Sections 7(a)(1) and 7(a)(2), 16 U.S.C. § 1536(a)(1) and (2), by failing to carry out certain conservation programs and reasonable and prudent measures contained in the ESA biological opinion; (4) EPA violated ESA Section 7(a)(2), 16 U.S.C. § 1536(a)(2), by failing to reinitiate consultation; (5) the Services violated ESA Section 7(a)(2), 16 U.S.C. § 1536(a)(2), by failing to reinitiate consultation; and (6) EPA violated the APA, 5 U.S.C. § 706(1), by failing to promulgate the selenium and mercury water quality criteria;

WHEREAS, concurrent with or prior to the entry of this consent decree, the Second,

Third, Fourth and Fifth Claims in the Complaint are dismissed without prejudice and the Sixth Claim is dismissed with prejudice;

WHEREAS, Section 303(c)(4)(B) of the CWA, 33 U.S.C. § 1313(c)(4)(B), provides that the EPA Administrator shall promptly prepare and publish proposed regulations setting forth a revised or new water quality standard when the Administrator determines that a revised or new water quality standard is necessary to meet the requirements of the CWA;

WHEREAS, Section 303(c)(4)(B) of the CWA, 33 U.S.C. § 1313(c)(4)(B), further provides that EPA must promulgate a final standard within 90 days of publication of a proposed standard;

WHEREAS, EPA found that certain new or revised water quality standards were necessary to implement CWA Section 303(c)(2)(B) for the State of California when EPA published the proposed rule for the "Establishment of Numeric Criteria for Priority Toxic Pollutants for the State of California," referred to as the California Toxics Rule ("1997 Proposed CTR"), covering a long list of priority toxic pollutants, water bodies, and designated uses at 62 Fed. Reg. 42,160 (Aug. 5, 1997);

WHEREAS the 1997 Proposed CTR proposed selenium aquatic life criteria and mercury aquatic life criteria while leaving intact any water quality criteria that had been previously promulgated or approved by EPA, including those promulgated in the 1992 National Toxics Rule ("1992 NTR"), 57 Fed. Reg. 60,848 (Dec. 22, 1992);

WHEREAS, EPA previously promulgated selenium aquatic life criteria for three water body segments of the San Francisco Bay and Delta and lower San Joaquin River system in the 1992 NTR;

WHEREAS, EPA initiated formal consultation with the Services under Section 7 of the

ESA on the Proposed CTR which resulted in the Services' issuance of their March 24, 2000 Biological Opinion;

WHEREAS, the EPA-promulgated 2000 Final California Toxics Rules, consistent with the Biological Opinion, reserved the promulgation of the freshwater selenium aquatic life criterion maximum concentration and all mercury aquatic life criteria in order to address the Services' concern that the proposed criteria were not sufficiently protective of ESA-listed species;

WHEREAS, since the 2000 Final CTR, the State of California has submitted, and EPA has approved, seven site-specific mercury criteria for the protection of aquatic life;

WHEREAS, Plaintiffs and EPA (collectively "the Parties") wish to effectuate a settlement of the above-captioned matter without continued litigation;

WHEREAS, the Parties have agreed to a settlement of this action, as described in Section III below, without any admission or adjudication of fact or law;

WHEREAS, the Parties consider this Decree to be in the public interest and an adequate and equitable resolution of the claims in the above-captioned matter; and

WHEREAS, the Court, by entering this Decree, finds that the Decree is fair, reasonable, in the public interest, and consistent with the CWA, 33 U.S.C. §§ 1251-1387;

NOW THEREFORE, without trial or determination of any issue of fact or law, and upon the consent of the Parties, it is hereby ORDERED, ADJUDGED and DECREED that:

### I. GENERAL TERMS

1.	This Court has subject matter jurisdiction over the First Claim set forth in the Complaint. Venue is proper in the United States District Court for the Northern District of California.

2.      Plaintiffs and EPA shall not challenge the terms of this Decree or this Court's jurisdiction to enter and enforce this Decree.  Upon entry, no party shall challenge the terms of this Decree.

## II.  DEFINITIONS

3.      "Selenium Criteria" mean one or more water quality criteria to protect aquatic life and aquatic-dependent wildlife from the harmful long-term effects of selenium, including protection from harmful long-term effects of short-term exposures to selenium.  Such water quality criteria will consist of numeric values that EPA determines are protective of the designated uses of the applicable waters, pertaining to aquatic life and aquatic-dependent wildlife.

4.      "Mercury Criteria" mean one or more mercury water quality criteria to protect aquatic life and aquatic-dependent wildlife.  Such water quality criteria will consist of numeric values that EPA determines are protective of the designated uses of the applicable waters, pertaining to aquatic life and aquatic-dependent wildlife.

5.      "Mercury Site-Specific Criteria" mean the EPA-approved site-specific mercury water quality criteria for the protection of aquatic and aquatic-dependent wildlife.  Since the 2000 Final CTR, the California State Water Resources Control Board has submitted, and EPA has approved, seven site-specific mercury criteria.[1]

6.      "Bay Delta" means the waters covered by the 1992 NTR promulgation of

---

[1] See attached Exhibit 1 (December 24, 1987, May 29, 2000 and January 5, 2005 EPA letters approving criteria based on salinity for San Francisco Bay and Delta); Exhibit 2 (February 12, 2008 EPA letter approving criteria for San Francisco Bay and Delta); Exhibit 3 (September 29, 2008 EPA letter approving criteria for Walker Creek, Soulajule Reservoir and all tributaries); Exhibit 4 (June 1, 2010 EPA letter approving criteria for Guadalupe River watershed (with exceptions) and upstream tributaries); Exhibit 5 (October 20, 2011 EPA letter approving criteria for Sacramento and San Joaquin Delta); Exhibit 6 (February 6, 2007 EPA letter approving criteria for Cache Creek, Bear Creek and Harley Gulch); Exhibit 7 (September 26, 2003 EPA letter approving criteria for Clear Lake).

selenium aquatic life criteria for two water bodies in the San Francisco Bay Delta system and a third intervening water body. These three criteria promulgations together covered selenium for an extended segment reaching from San Francisco Bay upstream through the Delta and into the lower reaches of the San Joaquin River system. The three segments are, going upstream: (1) "Waters of San Francisco Bay upstream to and including Suisun Bay and the Sacramento-San Joaquin Delta"; (2) "Waters of the San Joaquin River from the mouth of the Merced River to Vernalis"; and (3) "Waters of Salt Slough, Mud Slough (north) and the San Joaquin River, Sack Dam to the mouth of the Merced River." 57 Fed. Reg. 60848, 60921, codified at 40 C.F.R. § 131.36(b)(1)(ii).

7. "Propose criteria" by a date certain means that, on or before that date, the appropriate EPA official signs, for publication in the Federal Register, proposed regulations setting forth numeric water quality criteria, pursuant to Section 303(c) of the Clean Water Act, 33 U.S.C. § 1313(c).

8. "Finalize" a proposal by a date certain means that, on or before that date, the appropriate EPA official signs, for publication in the Federal Register, a notice(s) of final rulemaking addressing each of the water quality criteria that were proposed in the proposal.

9. In Section III.A. (respecting Selenium Criteria), "Rest of California" means waters of the United States in California that are fresh waters and are not part of the "Bay Delta."

10. In Section III.B. (respecting Mercury Criteria), "Rest of California" means waters of the United States in California that are not covered by the "Mercury Site-Specific Criteria."

11. "Salt Waters" are those waters with 10 parts per thousand ("ppt") or more of salinity 95% or more of the time. 40 C.F.R. § 131.36(c)(3)(ii).

12. "Fresh Waters" are those with 1 ppt or less of salinity 95% or more of the time.

40 C.F.R. § 131.36(c)(3)(i).

13. "Estuarine Waters" are those waters with salinities that exceed the maximum threshold of salinity for Fresh Waters but do not meet the minimum threshold of salinity for Salt Waters.

### III. TERMS OF AGREEMENT

A.      Selenium Criteria:

14. Except as provided in Paragraphs 15 or 18, EPA shall propose Selenium Criteria for the Rest of California by November 30, 2016.

15. In the event that EPA proposes Selenium Criteria for Salt and Estuarine Waters of the Bay Delta by June 30, 2016, EPA will propose Selenium Criteria for the Rest of California by November 30, 2018.

16. EPA shall request initiation of any necessary ESA Section 7(a)(2) consultation with the Services on the proposed Selenium Criteria for the Rest of California no later than nine (9) months after the date EPA proposes the criteria.

17. Except as provided in paragraph 18, EPA shall finalize its proposal of Selenium Criteria for the Rest of California within six (6) months of the later of the following dates: (1) the date of EPA's conclusion (if any) that it will not seek ESA Section 7(a)(2) consultation because some or all of the proposed Selenium Criteria have "no effect" on any listed ESA species or designated critical habitat; (2) the date of the Services' written concurrence(s) with any EPA conclusion that some or all of the proposed Selenium Criteria are "not likely to adversely affect" listed ESA species or designated critical habitat pursuant to 50 C.F.R. §§ 402.13(a) and 402.14(b); or (3) the date of the Services' Biological Opinion(s) concluding any formal consultation on the proposed Selenium Criteria pursuant to 50 C.F.R. § 402.14(l).

18.   In the event that EPA approves, pursuant to Section 303(c)(3) of the CWA, Selenium Criteria submitted by the State of California for all or any portion of the Rest of California, EPA's obligation to propose or finalize a proposal for Selenium Criteria under this Section for that specific area is null and void.

19.   This Consent Decree shall not be construed for any purpose as a requirement that EPA propose or finalize any proposal for selenium criteria for the Bay Delta.

B.   Mercury Criteria:

20.   In the event that EPA has not approved, pursuant to CWA Section 303(c)(3), 33 U.S.C. § 1313(c)(3), Mercury Criteria submitted by the State of California for all waters in the Rest of California by June 30, 2017, then EPA shall propose Mercury Criteria by June 30, 2017 for those waters in the Rest of California for which EPA has not approved Mercury Criteria submitted by the State of California.

21.   EPA shall request initiation of any necessary ESA Section 7(a)(2) consultation with the Services on the proposed Mercury Criteria no later than nine (9) months after the date EPA proposes the criteria.

22.   Except as provided in Paragraph 23, EPA shall finalize its proposal of Mercury Criteria within six (6) months of the later of the following dates: (1) the date of EPA's conclusion (if any) that it will not seek ESA Section 7(a)(2) consultation because some or all of the proposed Mercury Criteria have "no effect" on any listed ESA species or designated critical habitat; (2) the date of the Services' written concurrence(s) with any EPA conclusion that some or all of the proposed Mercury Criteria are "not likely to adversely affect" listed ESA species or designated critical habitat pursuant to 50 C.F.R. §§ 402.13(a) and 402.14(b); or (3) the date of the Services' Biological Opinion(s) concluding any formal consultation on the proposed Mercury

Criteria pursuant to 50 C.F.R. § 402.14(l).

23. In the event that EPA approves, pursuant to Section 303(c)(3) of the CWA, Mercury Criteria submitted by the State of California for all or any portion of the Rest of California, EPA's obligation to propose or finalize a proposal for Mercury Criteria under this Section III.A for that specific area is null and void.

### IV. ATTORNEYS' FEES AND COSTS

24. The Parties agree that Plaintiffs are entitled to reasonable attorneys' fees and costs accrued as of the Effective Date of this Consent Decree on the First Claim of the Complaint. The Parties will attempt to reach agreement as to the appropriate amount of the recovery. If the Parties are unable to reach agreement after following the informal dispute resolution process in Paragraph 34, Plaintiffs shall file with the Court any request for attorney's fees no earlier than ninety days (90) after the Effective Date of this Consent Decree. EPA shall have forty-five (45) days to file its response to Plaintiffs' fee request. Payment of fees and costs pursuant to this paragraph shall constitute payment in full of any fees and costs to which Plaintiffs may be entitled in this action through the date of payment of such fees and costs.

### V. EFFECTIVE DATE

25. This Consent Decree shall become effective upon the date of its entry by the Court. If for any reason the District Court does not enter this Consent Decree, the obligations set forth in this Consent Decree are null and void.

### VI. REMEDY, SCOPE OF JUDICIAL REVIEW

26. Nothing in this Consent Decree shall be construed to confer upon the Court jurisdiction to review any decision, either procedural or substantive, to be made by EPA pursuant to this Consent Decree, except for the purpose of determining EPA's compliance with this

Consent Decree.

27. Nothing in this Consent Decree alters or affects the standards for judicial review, if any, of any final EPA action.

## VII. RELEASE BY PLAINTIFFS

28. Upon entry of this Consent Decree by the Court, without further order from the Court, Plaintiffs' Sixth Claim shall be deemed dismissed with prejudice and Plaintiffs' Second, Third, and Fourth Claims shall be deemed dismissed without prejudice. Plaintiffs' First Claim shall be deemed dismissed with prejudice on the date that this Consent Decree terminates. Plaintiffs voluntarily dismissed the Fifth Claim on May 1, 2014.

29. Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a complete and final settlement of all claims that were asserted, or that could have been asserted, by Plaintiffs against Defendants relating to the First and Sixth Claims in the Complaint.

30. Plaintiffs hereby release, discharge, and covenant not to assert (by way of the commencement of an action, the joinder of the Administrator and/or EPA in an existing action, or in any other fashion) any and all claims, causes of action, suits or demands of any kind whatsoever in law or in equity that they may have had, or may now have, against Defendant EPA related to the First and Sixth Claims in the Complaint, expressly including any allegation that EPA has failed to propose or finalize any proposed water quality criteria at issue in those Claims under CWA Section 303(c), 33 U.S.C. § 1313(c) or that such failure has violated the ESA Sections 7(a)(1), 7(a)(2) or 9, 16 U.S.C. § 1536(a)(1), (2), or § 1538(a)(1)(B).

## VIII. TERMINATION OF CONSENT DECREE

31. When EPA's obligations under Paragraphs 14 through 23 have been completed,

and the Plaintiffs' claims for costs of litigation have been resolved pursuant to the process described in Paragraph 24, this Consent Decree shall terminate. The Parties shall file the appropriate notice with the Court so that the Clerk may close the file.

## IX. FORCE MAJEURE AND APPROPRIATED FUNDS

32. The obligations imposed upon EPA under this Decree can only be undertaken using appropriated funds. No provision of this Decree shall be interpreted as or constitute a commitment or requirement that the Administrator obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. §§ 1341, et seq, or any other applicable federal statute.

33. The Parties recognize that the performance of this Consent Decree is subject to fiscal and procurement laws and regulations of the United States which include, but are not limited to, the Anti-Deficiency Act, 31 U.S.C. §§ 1341, et seq. The possibility exists that circumstances outside the reasonable control of EPA could delay compliance with the obligations in this Consent Decree. Such situations include, but are not limited to, a government shutdown; catastrophic environmental events requiring immediate and/or time-consuming response by EPA; and extreme weather events (including but not limited to drought and hurricanes). Should a delay occur due to such circumstances, any resulting failure to fulfill any obligation set forth herein shall not constitute a failure to comply with the terms of this Consent Decree, and any deadline so affected shall be extended one day for each day of the delay. EPA will provide Plaintiffs with reasonable notice in the event that EPA invokes this Paragraph. Any dispute regarding such invocation shall be resolved in accordance with the dispute resolution process set forth in Paragraph 34.

## X. DISPUTE RESOLUTION

34. In the event of a dispute between the Parties concerning the interpretation or

implementation of any aspect of this Decree, the disputing Party shall provide the other Party with a written notice outlining the nature of the dispute and requesting informal negotiations. If the Parties cannot reach an agreed-upon resolution within thirty (30) days after receipt of the notice, any Party may move the Court to resolve the dispute.

## XI. MODIFICATIONS AND EXTENSIONS

35. The deadlines set forth in Paragraphs 14 through 23 above may be extended by written agreement of the Parties with notice to the Court. To the extent the Parties are not able to agree on an extension of any deadline set forth in this Consent Decree, EPA may seek extension of the deadline in accordance with the procedures specified below.

    A. If EPA files a motion requesting extension of any date or dates established by this Consent Decree totaling more than thirty (30) days and has provided notice to Plaintiffs at least thirty (30) days prior to filing such motion and has filed the motion at least sixty (60) days prior to the date for which modification is sought, then the filing of such motion shall, upon request, automatically extend the date for which modification is sought. Such automatic extension shall remain in effect until the earlier of (i) a dispositive ruling by this Court on such motion, or (ii) the date sought in such motion. EPA may seek only one extension under this subparagraph for each date established by this Consent Decree.

    B. If EPA files a motion requesting extension of a date or dates established by this Consent Decree totaling thirty (30) days or less and has provided notice to Plaintiffs at least fifteen (15) days prior to the filing of such motion and has filed the motion at least seven (7) days prior to the date for which modification is sought, then the filing of such motion shall, upon request, automatically extend the date for which modification is sought. Such extension shall remain in effect until the earlier of (i) a dispositive ruling by this Court on such motion, or (ii)

the date sought in the motion. EPA may seek only one extension under this subparagraph for each date established by this Consent Decree.

    C. If the automatic extension set forth in Subparagraphs 34.A or 34.B does not apply, EPA may move the Court for a stay of the date for which modification is sought. EPA shall give notice to Plaintiffs as soon as reasonably possible of its intent to seek an extension and/or stay of the date sought to be modified.

    D. If the Court denies a motion by EPA to extend a date established by this Consent Decree, then the date for performance for which modification had been requested shall be such date as the Court may specify.

## XII. CONTINUING JURISDICTION

36. The Court retains jurisdiction for the purposes of resolving any disputes arising under this Consent Decree, and issuing such further orders or directions as may be necessary or appropriate to construe, implement, modify, or enforce the terms of this Consent Decree, and for granting any further relief as the interests of justice may require.

## XIII. AGENCY DISCRETION

37. Except as provided herein, nothing in this Decree shall be construed to limit or modify any discretion accorded the Administrator by the CWA, the APA, the ESA or general principles of administrative law in taking the actions that are the subject of this Decree.

38. Nothing in this decree shall be construed as an admission of any issue of fact or law.

## XIV. NOTICE AND CORRESPONDENCE

39. Any notices required or provided for by this Decree shall be made in writing, via electronic mail and, if electronic mail is infeasible due to the nature of the notice, by U.S. mail,

and sent to the following:

For Plaintiffs:

Christopher Sproul
Jodene Isaacs
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376, (510) 847-3467
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com
Email: jisaacs@enviroadvocates.com

Michael Costa (electronic mail copies only)
3848 Sacramento St. #2
San Francisco, CA 94118
Telephone: (415) 342-0042
Email: mike@ocefoundation.org

For Defendant EPA:

Ethan Carson Eddy, Trial Attorney
Wildlife and Marine Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044
(202) 305-0202 (phone)
(202) 305-0275 (fax)
ethan.eddy@usdoj.gov

John Thomas H. Do, Trial Attorney
Environmental Defense Section
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044
(202) 514-2593 (phone)
(202) 514-8865 (fax)
john.do@usdoj.gov

David Berol, Attorney-Advisor
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W., MC-2333A,
Washington, DC 20460
(202) 564-6873
berol.david@epa.gov

Marcela von Vacano, Assistant Regional Counsel
U.S. Environmental Protection Agency

Region 9
75 Hawthorne Street (ORC-2)
San Francisco, CA 94105
415-972-3905
vonvacano.marcela@epa.gov

Tom Hagler, Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 9
75 Hawthorne Street, RC-2
San Francisco, California 94105-3901
(415)972-3945
hagler.tom@epa.gov

## XV. REPRESENTATIVE AUTHORITY

40. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

41. The undersigned representatives of each Party certify that they are fully authorized by the Party they represent to bind that Party to the terms of this Decree.

**SO AGREED**

For Plaintiffs:

Dated:    8/22/2014

_____
Christopher Sproul
Jodene Isaacs
ENVIRONMENTAL ADVOCATES

For Defendant EPA:

        SAM HIRSCH
        Acting Assistant Attorney General
        U.S. Department of Justice
        Environment & Natural Resources Division

Dated:     8/22/2014

        JOHN THOMAS H. DO, Trial Attorney
        Environmental Defense Section

**SO ORDERED**

Dated and entered this __25th__ day of __August__, 2014.

        United States District Judge