Christopher A. Sproul (Bar No. 126398)
Jodene L. Isaacs (Bar No. 226895)
Environmental Advocates
5135 Anza Street
San Francisco, California 94121
Telephone (415) 533-3376
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com
Email: jisaacs@ enviroadvocates.com

Michael A. Costa (Bar No. 219416)
3848 Sacramento St. #2
San Francisco, CA 94118
Telephone: (415) 342-0042
Email: mike@ocefoundation.org

OUR CHILDREN 'S EARTH FOUNDATION and
ECOLOGICAL RIGHTS FOUNDATION

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OUR CHILDREN 'S EARTH FOUNDATION, non-profit corporation, and ECOLOGICAL RIGHTS FOUNDATION, a non-profit corporation,<br><br>Plaintiffs,<br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, BOB PERCIASEPE, Acting Administrator, JARED BLUMENTHAL, Regional Administrator U.S. Environmental Protection Agency Region 9, NATIONAL MARINE FISHERIES SERVICE, REBECCA BLANK, as Acting Secretary of Commerce, RODNEY MCINNIS, as Regional Administrator of the National Marine Fisheries Service Southwest Region, U.S. DEPARTMENT OF THE INTERIOR, KEN SALAZAR, as Secretary of the Department of the Interior, REN LOHOEFENER as Regional Administrator of the United States Fish and Wildlife Service Pacific Southwest Region,<br><br>Defendants. | Civil Case No.: 4:13-cv-2857-JSW<br><br>DECLARATION OF CHRISTOPHER SPROUL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS<br><br>Hearing date: April 3, 2015<br>Time: 9:00 a.m.<br>Location: Courtroom 5 |

## DECLARATION OF CHRISTOPHER SPROUL

I, Christopher Sproul, hereby declare and state under penalty of law that the following facts are true and correct:

1.      I am an attorney admitted to the bar of this Court. I am a partner in Environmental Advocates, a law partnership, and counsel for Plaintiffs Our Children's Earth Foundation ("OCE") and Ecological Rights Foundation ("ERF") in this matter. I make this Declaration in support of the Plaintiffs' Motion for Attorneys' Fees and Costs based on my personal knowledge, and I am competent to testify to the matters set forth herein.

2.      In **Part I** of this Declaration, I explain how I and my colleagues have set the hourly rates for each attorney who has worked on this case based on the experience and qualifications of each attorney and my review of relevant information on prevailing market rates for attorneys of like skill and experience in the San Francisco Bay Area. In **Part II**, I summarize the substantial history of this litigation and highlight the major litigation tasks performed by Environmental Advocates attorneys, including drafting the pleadings, gathering and reviewing the substantial factual record, litigating the major motions, and attempting to minimize litigation and pursue settlement. This section also provides a summary of each attorney's specific contributions to the case. **Part III** summarizes the attorneys' fee lodestars for Environmental Advocates attorneys calculated using San Francisco-based rates. **Part IV** provide supporting information for Plaintiffs' recovery of costs, including expert costs.

## I.      Explanation of Hourly Rates of Plaintiffs' Counsel

3.      Environmental Advocates is located in San Francisco, California. Environmental Advocates exclusively represents non-profit environmental organizations, individuals, and other entities that seek to advance environmental protection and restoration. Most of our work involves federal court litigation brought pursuant to the citizen suit provisions of the federal environmental statutes.

4.      The following attorneys working with Environmental Advocates have performed legal work in this matter for which Plaintiffs are seeking recovery of attorneys' fees: Christopher Sproul, Jodene Isaacs, Michael Costa, and Page Perry. The hourly rates charged by these attorneys, their relevant qualifications ,and justifications for their hourly rates are set forth below and in companion declarations submitted by each of these attorneys.

**A.      Justification for Hourly Rate of Christopher Sproul**

**1.      Christopher Sproul's Biographical Information**

5.      I earned my Juris Doctorate from the University of California, Berkeley (Boalt Hall) in June 1986 and a Master of Arts degree in political science from the University of California, Santa Barbara in August 1982.

6.      I have been a member of the California Bar since December 1986. I have also been a member of the United States District Court for the Northern District of California since 2002.

7.      I have been a partner in Environmental Advocates for over 12 years and the managing partner of the firm for over nine years. I have exclusively represented non-profit environmental organizations and individuals seeking to advance environmental protection through judicial litigation and administrative advocacy under the major environmental laws, including the Clean Water Act ("CWA"), Endangered Species Act ("ESA"), Clean Air Act ("CAA"), Resource Conservation and Recovery Act ("RCRA"), National Environmental Policy Act ("NEPA"), the California Environmental Quality Act ("CEQA") and other state and federal laws, including the Freedom of Information Act ("FOIA") and the California Public Records Act. I have also brought actions against federal agencies under the Administrative Procedure Act (APA) challenging agency actions or inaction. Numerous of these actions have resulted in court orders or judicial consent decrees imposing far-reaching injunctive relief for environmental remediation.

8.      During my time as a partner at Environmental Advocates, I have represented environmental organization clients in several CWA, ESA and APA citizen suits against EPA and/or the National Marine Fisheries Service ("NMFS"), alleging breaches of EPA mandatory CWA duties or challenging EPA failures to act or seeking to reverse NMFS decisions. I have also represented environmental organization clients in numerous CWA citizen suits against municipalities and private companies seeking to abate water pollution violations. I have additionally represented environmental organization clients in several ESA citizen suits against the U.S. Army Corps of Engineers ("the Corps"), public water districts, and a large university seeking to remedy harms being done to aquatic species protected under the ESA.  I have also provided advice to several environmental organization clients concerning the potential for several other citizen suit enforcement actions for violations of the CWA and/or the

1   ESA. I have also presented public hearing testimony and drafted written comments to government

2   agencies concerning various CWA and ESA regulatory decisions.

3   9.      Prior to joining Environmental Advocates, I served as an Assistant Regional Counsel for the

4   United States Environmental Protection Agency ("EPA") from 1987 until 2002. At EPA, my primary

5   concentration was representing EPA in judicial and administrative enforcement actions brought under

6   the environmental statutes administered by EPA. My accomplishments include several judicial and

7   administrative settlements and judgments resulting in extensive injunctive relief and civil penalty

8   awards.

9   10.     During my 15-year tenure at EPA, I worked on several matters involving the ESA. As a staff

10  attorney at the EPA, I developed and helped prosecute numerous civil cases involving the unlawful

11  discharge of dredged and fill material to waters of the United States in violation of the federal CWA. In

12  many of these cases, the unlawful discharges at issue also adversely impacted various endangered

13  species. Proper prosecution of these cases required me to assess the extent of the potential violation of

14  the ESA. In some cases, whether the actions at issue involved an ESA violation affected the potential

15  authorization of some of the activities by certain CWA general permits issued by the Corps (a matter

16  relevant to the extent of liability). In other cases, this information was necessary to ensure proper

17  coordination between EPA and the relevant federal wildlife agencies, such as the United States Fish &

18  Wildlife Service, in prosecution of these cases. Also in my role as a staff attorney at the EPA, I was

19  assigned to providing advice concerning certain EPA and Corps actions that had the potential to affect

20  endangered species. In providing this advice, I was required to analyze the potential requirements of

21  ESA section 7 as they affected these actions.

22  11.     While at EPA, I also worked on several permitting matters, including litigation challenges to

23  EPA NPDES permit decisions; assisted in EPA reviews of state environmental programs: counseled

24  EPA staff in responding to FOIA responses; participated in work groups tasked with drafting EPA

25  regulations and proposed amendments to the CWA; and provided client counseling to numerous EPA

26  regulatory officials.

27  12.     From 1997 to 1998, through an intergovernmental personnel agreement between EPA and the

28  State of Hawaii, I worked for the Hawaii Attorney General as a staff attorney. In this role, I represented

the Hawaii Department of Health in several water pollution enforcement actions under the Hawaii equivalent of the federal CWA, provided advice to the Department of Health concerning many regulatory matters, and provided advice to the Hawaii State Legislature concerning environmental legislation related to water pollution.

13.     From 2004 to 2010, I was an Adjunct Professor at Golden Gate University School of Law in San Francisco where I taught a course on environmental litigation. I also served as a law clerk to U.S. District Court Judge William J. Rea, in the U.S. District Court for the Central District of California in 1986 and 1987.

14.     Over the course of my years of practicing law in California, I have filed several motions for attorneys' fees and costs and mediation briefs in fee negotiation matters. Prior to this motion, I filed my most recent fee motion in September 2014.  In the course of drafting these motions and mediation briefs, I have necessarily acquired expertise and extensive data concerning the prevailing hourly rates for attorneys in the San Francisco Bay Area legal market.

15.     I have worked on this case from March 2012 until the present. For the time I worked on the case through May 31, 2012, I have billed at a rate of $600 per hour. The starting point for my calculation of this 2011-2012 rate was the $585 per hour rate awarded me the previous year for work done in 2010 and 2011 in *South Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 2012 WL 1038131 (E.D. Cal. March 27, 2012) ("*SYRCL*"), *aff'd* 2014 U.S. App. LEXIS 12450 (9th Cir. July 1, 2014) and *San Francisco Baykeeper v. West Bay Sanitary District*, No. C-09-5676 EMC (N.D. Cal. Dec. 1, 2011) (Dkt. 174). I increased this rate by $15 per hour, an increase commensurate with the general increase in attorneys' hourly rates in the San Francisco market and well within the range of rates charged then by attorneys with equivalent experience.- After that, I have billed according to my 2012-13 rates (effective from June 1, 2012 to May 31, 2013), 2013-2014 rates (effective from June 1, 2013 to May 31, 2014), and 2014-15 rates (effective from June 1, 2014 to May 31, 2015) as set forth below:

Sproul Billing Rates

| Time Period | Rate |
|---|---|
| June 1, 2011 – May 31, 2012 | $600 |
| June 1, 2012 – May 31, 2013 | $615 |
| June 1, 2013 – May 31, 2014 | $625 |
| June 1, 2014 – May 31, 2015 | $655 |

16.     These rates are commensurate with the rates found reasonable in the attorney fee award decisions in *SYRCL* and *San Francisco Baykeeper*. As noted, in both of these cases, the courts awarded me $585 per hour as a reasonable 2010-2011 San Francisco market-based rate based on my presentation of extensive supporting market data and comparable case fee awards and my demonstration that this rate was in accord with the U.S. Department of Justice's "Laffey Matrix."[1] The Ninth Circuit has subsequently affirmed the District Court decision in *SYRCL* and thus implicitly affirmed the rates awarded me and my co-counsel in that case. A rate of $655 per hour for me as a 2014-15 rate is reasonable using these decisions as a benchmark. This $655 per hour rate represents an increase of only about 12% in my rates since 2010-2011 (or less than 3% per year) and appropriately reflects that I now have four years more experience and attorney rates in general have continued to rise over the last four years. That the latter is true is underscored, for example, by the Laffey Matrix—which has shown a steady increase in attorney rates over the past four years.[2] Legal journals have also consistently reported that attorneys' fees rates have continued to increase in recent years. *See, e.g*., ABA Journal, "Average Hourly Billing Rate For Partners Last Year Was $727 In Largest Law Firms" (posted July 15, 2013) (published at:

---

[1] The Department of Justice's Laffey Matrix is designed to provide objective guidance in assessing appropriate hourly rates for attorneys of differing levels of experience in the Washington, D.C. area. *Kempf v. Barrett Bus. Servs., Inc.*, 2007 U.S. Dist. LEXIS 89447, at *13 (N.D. Cal. 2007).  Courts in the Ninth Circuit have recognized the value of the Laffey Matrix and employed it, with modification for differences in pay scales between Washington, D.C. and local Ninth Circuit jurisdictions, in assessing the reasonableness of requested rates. *See id.*; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp.2d 1039, 1067-68 (N.D. Cal. 2010); *In re HPL Techs., Inc., Secs. Litig.* 366 F. Supp.2d 912, 921-22 (N.D. Cal. 2005); *St. Bernard v. State Collection Serv.*, 782 F. Supp.2d 823 (D. Ariz. 2010); *see also Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 708-10 (3d Cir. 2005).

[2] DOJ has increased the Laffey Matrix base rate for an attorney with 20-plus years of experience from $475 per hour in 2010-2011 to $520 in 2014-2015, an increase of nearly 10%. *See* DOJ Laffey Matrices for these years published on DOJ's internet homepage at: http://www.justice.gov/usao/dc/divisions/Laffey_Matrix%202014.pdf and http://www.justice.gov/usao/dc/divisions/Laffey%20Matrix_2014-2015.pdf. Notably, this increase reflects only the inflation in the legal market, as it reflects the comparative rates charged in these years by attorneys with the same years of experience. This increase does not reflect the added compensation that an attorney who had 20 years of experience in 2010-2011 would demand in 2014-2015 when the same attorney had 24 years of experience. With this in mind, the 12% increase in my hourly rate from 2010-2011 to 2014-2015 is comparatively modest, as it reflects the increase in my rate due to both my added years of experience as well as inflation in the legal market.

1  http://www.abajournal.com/news/article/average_hourly_billing_rate_for_partners_last_year_was_727_

2  in_largest_law_f/).

3  17.     My historic rates and current rate are well within prevailing market rates in San Francisco as

4  further evidenced by recent Northern District of California decisions. Several recent Northern District

5  decisions have awarded significantly higher rates to attorneys whose experience is comparable to mine,

6  and/or awarded hourly rates only marginally lower than these, to attorneys with significantly less

7  experience than I have:

8  - In *Rosenfeld v. United States DOJ*, 904 F. Supp.2d 988, 1002 (N.D. Cal. 2012), the court

9    approved hourly rates of $700 for an attorney with twenty-eight years of experience and

10    $550 for an attorney with twenty-one years of experience as appropriate 2012 rates. The

11    court determined that based on market data "an attorney with 28 years of experience,

12    would likely command an hourly billed rate between $640 and $875." *Id.* Notably, I set

13    my 2012 rates between $600 and $615 per hour, substantially less than the $700 per hour

14    awarded in *Rosenfeld* to an attorney with twenty-eight years of experience in 2012, even

15    though I had more years of experience during this time. Even my 2014-15 rate of $655

16    per hour is less than this $700 per hour rate, for an attorney with the same number years

17    of experience set several years ago.

18  - In *American Civil Liberties Union v. Drug Enforcement Administration*, 2012 U.S. Dist.

19    LEXIS 190389 (N.D. Cal., Nov. 8, 2012), the court approved hourly rates of $575 for an

20    attorney with twelve years of experience, $595 for an attorney with fifteen years of

21    experience, $700 for an attorney with forty-one years of experience, and $150 for law

22    clerks as appropriate 2012 rates. Notably, the $595 per hour rate for an attorney with

23    fifteen years of experience is only slightly less than the rate that I set for myself in 2011-

24    2012 even though I had more than a decade of additional experience.

25  - In *Davis v. Prison Health Serv.*, 2012 U.S. Dist. LEXIS 138556 (N.D. Cal., Sept. 25,

26    2012), the court awarded fee rates of $675 and $750 to an attorney with twenty-nine,

27    thirty-two, and thirty-three years of experience as appropriate 2012 rates. Notably, these

28

rates are substantially higher than the rate I am claiming nearly three years later--even though I have comparable experience.

- In *Armstrong v. Brown,* 2011 U.S. Dist. LEXIS 87428 (N.D. Cal. 2011), the court found a rate of $700 to be reasonable for an attorney with thirty-one years of experience. This rate awarded four years ago is well above what I am presently claiming, even though I have only slightly less experience.

18.  Moreover, recent expert declaration testimony provided in the Northern District by well-recognized attorney fee expert Richard Pearl further supports the reasonableness of my hourly rates. Notably, the Northern District has expressly recognized that "Mr. Pearl specializes in matters relating to court-awarded attorneys' fees and has served as an expert witness, mediator, and arbitrator in fee disputes and related matters. He has also written extensively on court-awarded attorneys' fees. Mr. Pearl is 'frequently called upon to opine about the reasonableness of attorneys' fees.'" *Kranson v. Fed. Express Corp.*, 2013 U.S. Dist. LEXIS 173499 (N.D. Cal. Dec. 11, 2013) (citations omitted). In a 2012 declaration submitted in *Frayley v. Facebook, Inc.*, Case No. 3:11-cv-01726-RS (N.D. Cal. Dec. 21, 2012) (a true and correct copy of this decision is attached here as Exhibit 2), Mr. Pearl attested to the reasonableness of fees ranging from $675 to $750 per hour for attorneys with twenty-nine to thirty-three years of experience.

19.  Mr. Pearl's *Frayley* Declaration supports its conclusion by reference to case law, the billing rates of numerous California law firms (which run consistently higher than those requested here for similar years of experience), as well as the results of the *Valeo 2012 Halftime Report*, a yearly survey of legal billing rates. According to Mr. Pearl, that report indicated that the average partner and associate rates for San Francisco were $750 and $495 per hour, respectively–rates substantially higher than my rate or my co-counsel's rates. Exhibit 2 at 14.

20.  My rates are within the range and, if anything, lower than the rates awarded to attorneys with comparable experience in cases discussed by Mr. Pearl's *Frayley* declaration. For example:

- In *Williams v. H&R Block Enterprises, Inc.*, Alameda County Superior Ct. No. 3 RG08366506 (November 8, 2012), the court approved a billing rate of $750 an hour for an attorney with thirty-one years of experience. This rate awarded more than two years

ago is substantially above the rate that I am presently claiming even though I have only slightly less experience. Notably, market rates have generally increased since 2012, underscoring that my present rate is reasonable and if anything, below-market.

- In *Luquetta v. The Regents of the Univ. of California, San Francisco*, Superior Ct., No.CGC-05-443007 (October 31, 2012), the court approved a billing rate of $785 an hour for an attorney with twenty-six years of experience, i.e., an attorney with less experience than me. Notably, this rate awarded in 2012 to an attorney with less experience (and when market rates were lower than they are presently) is higher than the rate I am seeking in 2014-2015.

- In *Charlebois v. Angels Baseball LP,* 2012 U.S. Dist. LEXIS 91069 (C.D. Cal. 2012), the court awarded $600-695 to an attorney with twenty-seven years of experience. Notably, these rates are essentially equal to or even higher than the rates I am claiming for all years from 2011-2012 to the present, even though I had as much or more years of experience during this timeframe.

- In 2011, the Northern District in *Wren v. RGIS Inventory Specialists,* 2011 U.S. Dist. LEXIS 38667 (N.D. Cal 2011), found $675 to be a reasonable 2010 rate (when market rates were substantially lower than they are now) for an attorney with twenty-nine years of experience. My rates are lower as an attorney with twenty-eight years of experience in 2014-2015.

- In *Californians for Disability Rights, Inc., et al. v. California Department of Transportation, et al*., 2010 U.S. Dist. LEXIS 141030 (N.D. Cal. 2010), the court approved $730 and $740 for attorneys with twenty-five and twenty-six years of experience as 2010 rates (when market rates were substantially lower than they are now). Notably, these rate is significantly higher than the rates charged by me as an attorney between 2011 and 2015 when I had twenty-six, twenty-seven and twenty-eight years of experience, and years after this 2010 award.

21.    I have also looked at the National Law Journal's recent publication of its billing rates survey that is attached as Exhibit 6. This National Law Journal survey reports billing rates for several San Francisco

law firms. The range of rates reported in the survey are commensurate (and actually tend to be higher) than either my rate or the rates charged by Plaintiffs' other attorneys in this case.

    **B.**    **Justification for Hourly Rate of Jodene Isaacs**

22.    The companion declaration of Ms. Isaacs filed concurrently with this declaration sets forth Ms. Isaacs' experience. As indicated in her declaration, Ms. Isaacs has been practicing law since 2003.

23.    Ms. Isaacs has worked on this case from March 2012 until the present.

24.    For the time she began working on the case through May 31, 2012, she billed at a $435 per hour rate. For time spent after that, she has billed according to her 2012-13 rates (effective from June 1, 2012 to May 31, 2013), 2013-2014 rates (effective from June 1, 2013 to May 31, 2014), and 2014-15 rates (effective from June 1, 2014 to May 31, 2015) which are set forth below.

Isaacs Billing Rates

| Time Period | Rate |
| --- | --- |
| June 1, 2011 – May 31, 2012 | $435 |
| June 1, 2012 – May 31, 2013 | $460 |
| June 1, 2013 – May 31, 2014 | $500 |
| June 1, 2014 – May 31, 2015 | $520 |

25.    In setting her hourly rate, Ms. Isaacs and I have considered market rates approved by courts in the Northern District, other available market data, as well as Ms. Isaacs' Northern District approved rate in *San Francisco Baykeeper v. West Bay Sanitary District*. The Northern District approved an hourly rate for Ms. Isaacs at $385 for work in 2010-2011. Since that time, Ms. Isaacs has surpassed the ten year mark in her practice of law, and we have increased her hourly rate step-wise in accord with each additional year of experience as is customary in the San Francisco legal market.

26.    In setting Ms. Isaacs rate, we have considered that these rate are commensurate with the rates found reasonable in the attorneys' fee award decisions in several recent Northern District cases:

- In *Californians for Disability Rights, Inc., et al. v. California Department of Transportation, et al.*, 2010 U.S. Dist. LEXIS 141030 (N.D. Cal. 2010), the court approved $570 an hour for attorneys with ten years of experience as a 2010 rate. Notably, this rate is significantly higher than the rates charged by Ms. Isaacs when she had ten and eleven years of experience -- years after this 2010 award.

- In *American Civil Liberties Union v. Drug Enforcement Administration,* 2012 U.S. Dist. LEXIS 190389 (N.D. Cal., 2012), the court awarded hourly rates of $575 for an attorney admitted to the bar in 1999 as an appropriate 2012 rate. This case provides support that a $520 per hour rate in 2014-2015 for Ms. Isaacs, who was admitted to the bar in 2003, is a reasonable market rate, as rates are higher in 2014-15 than 2012. For example, the Laffey Matrix base rate for an eleventh to nineteenth year attorney is 3.37% higher in 2014-15 than in 2012-13. Assuming the same rate of inflation as reflected in the Laffey Matrix, an attorney with twelve years experience's compensation would increase from $575 per hour in 2012-2013 to $594 per hour presently. If $594 per hour is a reasonable 2014-15 rate for an attorney with twelve  years of experience, then, $520 per hour for an attorney with eleven years of experience is easily not only a reasonable rate but actually under a market rate.

- In *Vallabhapurapu v. Burger King Corp.*, 2012 U.S. Dist. LEXIS 154867 (N.D. Cal October 29, 2012), the court awarded $450 for an attorney with eight years of experience as an appropriate 2012 rate. Notably, this rate is more than the rate Ms. Isaacs claims for the work she did in 2011-12 as an attorney with eight years of experience and is very nearly the same as the rate she claimed a year later when she had nine years of experience.

27.    Mr. Pearl's *Fraley* declaration referred to above further supports the reasonableness of Ms. Isaacs' rates. In this declaration, Mr. Pearl attested to the reasonableness of fees ranging from $460 and $550 per hour for attorneys with seven to twelve years of experience—*i.e,*, to rates similar to the rates claimed by Ms. Isaacs whose experience falls within this range.

28.    As noted, Mr. Pearl's *Fraley* declaration recites case decisions to support its conclusions.

29.    Ms. Isaacs' rates are within the range and, if anything, lower than the rates awarded in cases discussed by Mr. Pearl's *Frayley* declaration. For example:

- In *Charlebois v. Angels Baseball LP* (C.D. Cal. 2012) 2012 U.S. Dist. LEXIS 91069 (May 30, 2012), the court awarded $460 to an attorney with seven years of experience and $450 to an attorney with six years of experience as appropriate 2012 rates. Notably,

these rates are essentially equal to or even higher than the rates Ms. Isaacs is claiming in 2011-12 and 2012-13, even though she had more experience in these years.

- In *Credit/Debit Card Tying Cases*, San Francisco County Superior Court, JCCP No. 4335 (August 23, 2010), the court found that billing rates between $535 and $600 an hour were reasonable prevailing rates for attorneys with nine years of experience. Notably, this rate is higher than the $435 per hour Ms. Isaacs claims for work done in 2011-2012 (when market rates would have increased) when she had eight years of experience.

- In another 2010 case, *Savaglio, et al. v. WalMart*, Alameda County Superior Court No. C-835687-7, Order Granting Class Counsel's Motion for Attorneys' Fees, (September 10, 2010), the court found $500 an hour to be a reasonable 2010 rate for an attorney with nine years of experience, and the court approved of increases to that rate of between $5 to $25 for associates with additional years of experience. Again, this rate is significantly higher than the $435 per hour claimed for Ms. Isaacs in 2011-2012.

- In *Williams v. H&R Block Enterprises, Inc*., Alameda County Superior Ct. No. 3 RG08366506 (November 8, 2012), the court approved a billing rate of $500 an hour for an attorney who was admitted to the bar in 2004 and approved $470 an hour for an attorney admitted to the bar in 2005. These rates are higher than the $460 claimed for Ms. Isaacs in 2012, who was admitted to the bar in 2003.

- In *Luquetta v. The Regents of the Univ. of California, San Francisco*, Superior Ct., No.CGC-05-443007 (October 31, 2012), the court approved a billing rate of $520 an hour for an attorney admitted to the bar in 2002. Notably, this rate awarded in 2012 is equivalent to the rate sought for Ms. Isaacs in 2014-2015 (who was admitted to the bar in 2003) when market rates would have increased.

- In *Holloway et al. v. Best Buy Co., Inc.* (N.D. Cal. 2011) No. 05-5056 PJH (Order dated November 9, 2011), the court approved a lodestar award which included a $490 hourly rate for an attorney with eight years of experience. By comparison, the 2011-2012 rate of $435 per hour for Ms. Isaacs is significantly less than that amount even though she had the same years of experience.

30.     As noted, Mr. Pearl's *Fraley* Declaration further supports its conclusions by reference to the billing rates of numerous California law firms, as well as the results of the Valeo 2012 Halftime Report, a yearly survey of legal billing rates. According to Mr. Pearl, that report indicated that the average partner and associate rates for San Francisco were $750 and $495, respectively. This associate rate is higher than Ms. Isaacs' 2011-12 and 2012-13 rates when she had more experience than typical senior associates.

31.     Again, the hourly rates for Ms. Isaacs set forth above for 2012 to the present are modest by comparison to rates found to be reasonable San Francisco market rates. Indeed, her rates are lower than rates approved five years ago in some cases. Attorney rates have continued to rise in the San Francisco legal market over the past few years. Ms. Isaacs has more than eleven years of experience with complex environmental enforcement actions, making Ms. Isaacs' hourly rates well within the reasonable range of other attorneys practicing in San Francisco.

### C.     Justification for Hourly Rate of Michael Costa

32.     The companion declaration of Michael Costa filed concurrently with this declaration sets forth Mr. Costa's experience. As set forth in his declaration, Mr. Costa has been practicing law since 2002.

33.     Mr. Costa primarily worked on this case between June 2012 and April 2014.  In working with Mr. Costa to set his hourly rate for the time period that he worked on the case, we have considered market rates approved by courts in the Northern District and other available market data. We have increased his hourly rate step-wise in accord with each additional year of experience as is customary in the Northern District.

34.     Mr. Costa's 2012-2013 rate was applied time he billed between June 1, 2012 and May 31, 2013. After that, his 2013-2014 rates (effective from June 1, 2013 to May 31, 2014) were applied, and as of May 31, 2014, I will apply his 2014-2015 rate for the work he contributed to this motion. Mr. Costa's historic and present hourly rates are set forth as follows:

Costa Billing Rates

| Time Period | Rate |
| --- | --- |
| June 1, 2012 – May 31, 2013 | $495 |
| June 1, 2013 – May 31, 2014 | $505 |
| June 1, 2014 – May 31, 2015 | $525 |

35.     In setting Mr. Costa's rate, I have considered that these rate are commensurate with the rates found reasonable in the attorneys' fee award decisions in several recent Northern District cases:

- In *Californians for Disability Rights, Inc., et al. v. California Department of Transportation, et al*., 2010 U.S. Dist. LEXIS 141030 (N.D. Cal. 2010), the court approved $570 an hour for an attorney with ten years of experience as a 2010 rate. Notably, this rate is significantly higher than the rates charged by Mr. Costa when he had ten to twelve years of experience (*i.e*., in 2012 through 2015, when market rates would have been higher).

- In *American Civil Liberties Union v. Drug Enforcement Administration,* 2012 U.S. Dist. LEXIS 190389 (N.D. Cal., 2012), the court awarded hourly rates of $575 for an attorney admitted to the bar in 1999 as an appropriate 2012 rate. This case provides support that a $525 per hour rate in 2014-2015 for Mr. Costa who was admitted to the bar in 2002 is a reasonable market rate, as rates are higher in 2014-15 than 2012. For example, the Laffey Matrix base rate for an attorney with eleven to nineteen years of experience is 3.37% higher 2014-15 than in 2012-13. Assuming the same rate of inflation as reflected in the Laffey Matrix, an attorney with twelve years of experience's compensation would increase from $575 per hour in 2012-2013 to $594 per hour currently. Using this as a benchmark, $525 per hour for an attorney with twelve years of experience in 2014-2015 could easily be seen as being not only fair but actually under market rate.

- In *Stonebrae v. Toll Bros*., 2011 U.S. Dist. LEXIS 39832, (N.D. Cal. 2011), the court found the 2010 rate of $550 an hour for an attorney with nine years of experience

1    reasonable, which is higher than Mr. Costa's rate when he has twelve years of experience

2    in 2014-2015.

3    36.    Mr. Pearl's *Fraley* declaration referred to above further supports the reasonableness of Mr.

4    Costa's rates. In this declaration, Mr. Pearl attested to the reasonableness of fees ranging from $460 and

5    $550 per hour for attorneys with seven to twelve years of experience—*i.e.*, to rates similar to the rates

6    claimed by Mr. Costa whose experience falls within this range.

7    37.    As noted, Mr. Pearl's *Fraley* declaration recites case decisions to support its conclusions.

8    38.    Mr. Costa's rates are within the range and, if anything, lower than the rates awarded in cases

9    discussed by Mr. Pearl's *Frayley* declaration. For example:

10    • In *Credit/Debit Card Tying Cases*, San Francisco County Superior Court, JCCP No. 4335

11    (August 23, 2010), the court found that billing rates between $535 and $600 an hour were

12    reasonable prevailing rates for attorneys with nine years of experience. Notably, this rate

13    is higher than the $495 per hour Mr. Costa claims for work done in 2011-2012 (when

14    market rates would have increased) when he had nine years of experience.

15    • In another 2010 case, *Savaglio, et al. v. WalMart*, Alameda County Superior Court No.

16    C-835687-7, Order Granting Class Counsel's Motion for Attorneys' Fees, (September 10,

17    2010), the court found $500 an hour to be a reasonable 2010 rate for an attorney with

18    nine years of experience, and the court approved of increases to that rate of between $5 to

19    $25 for associates with additional years of experience. This rate is comparable to the rates

20    claimed by Mr. Costa, but from 2011 to 2014, when rates have only increased.

21    • In *Williams v. H&R Block Enterprises, Inc.*, Alameda County Superior Ct. No. 3

22    RG08366506 (November 8, 2012), the court approved a 2012 billing rate of $500 an hour

23    for an attorney admitted to the bar in 2004. This rate is comparable to the rate charged by

24    Mr. Costa, but he was admitted to the bar in 2002 and thus would have commanded an

25    even higher rate.

26    • In *Luquetta v. The Regents of the Univ. of California, San Francisco*, Superior Ct., 23

27    No.CGC-05-443007 (October 31, 2012), the court approved a billing rate of $520 an hour

28    for an attorney admitted to the bar in 2002 and $550 an hour for an attorney admitted to

the bar in 2001. Notably, these rates awarded in 2012 are higher than the rate sought for Mr. Costa in 2014-2015, who was admitted to the bar in 2002, when market rates have increased.

- In *Holloway et al. v. Best Buy Co., Inc.* (N.D. Cal. 2011) No. 05-5056 PJH (Order dated November 9, 2011), the court approved a lodestar award which included a $490 hourly rate for an attorney with eight years of experience. By comparison, the 2011-2012 rate of $495 for Mr. Costa, who had nine years of experience at that time, is only slightly more, and therefore below market rate, if anything.

39.    As noted, Mr. Pearl's *Fraley* Declaration further supports its conclusions by reference to the billing rates of numerous California law firms, as well as the results of the Valeo 2012 Halftime Report, a yearly survey of legal billing rates. According to Mr. Pearl, that report indicated that the average partner and associate rates for San Francisco were $750 and $495, respectively. This associate rate is equivalent to Mr. Costa's 2011-12 rate when he had more experience than typical senior associates.

40.    Again, the hourly rates for Mr. Costa set forth above for 2012 to the present are modest by comparison to rates found to be reasonable San Francisco market rates. Indeed, his rates are lower than rates approved five years ago in some cases. Attorney rates have continued to rise in the San Francisco legal market over the past few years, and Mr. Costa has more than twelve years of experience with complex environmental enforcement actions, thus his hourly rates are well within the reasonable range of other attorneys practicing in San Francisco.

### D.    Justification for Hourly Rate of Page Perry

41.    The companion declaration of Page Perry filed concurrently with this declaration sets forth Ms. Perry's experience. As set forth in her declaration, Ms. Perry has been practicing law since 2006.

42.    Ms. Perry has worked on this case from December 15, 2014 through the present. I have worked in conjunction with Ms. Perry to set her hourly rate and set it at $450 per hour, effective from June 1, 2014 to May 31, 2015. In setting her hourly rate, we relied on market research and prior case decisions. In *SYRCL*, the court accepted $430 as a reasonable rate for Brian Orion, who was admitted to the bar in 2005.  Thus, a rate of $450 per hour as a 2014-2015 rate for Ms. Perry is reasonable using this decision as a benchmark given that Ms. Perry has eight years of experience in 2014, as discussed in her

declaration, Declaration of Page Perry in Support for Motion for Attorneys' Fees and Costs.

43.     In setting Ms. Perry's rate, we have considered that this rate is commensurate, and even lower than the rates found reasonable in the attorneys' fee award decisions in several recent Northern District cases, for example:

- In *Californians for Disability Rights, Inc., et al. v. California Department of Transportation, et al*., 2010 U.S. Dist. LEXIS 141030 (N.D. Cal. 2010), the court approved $560 an hour for an attorney with nine years of experience, notably more than Ms. Perry's rate in 2014-2015, several years later, when she had only one less year of experience.

- In *Stonebrae v. Toll Bros*., 2011 U.S. Dist. LEXIS 39832, (N.D. Cal. 2011) the court found the 2010 hourly rate of $550 an hour for an attorney with nine years of experience reasonable. Notably, this is substantially more than Ms. Perry's 2014-2015 rate (when market rates are now substantially higher) for an attorney with only one more year experience.

- In *Holloway et al. v. Best Buy Co*., Inc. (N.D. Cal. 2011) No. 05-5056 PJH (Order dated November 9, 2011), the court approved an hourly rate of $490 an hour for an attorney with eight years of experience. Notably, this is substantially more than Ms. Perry's 2014-2015 rate (when market rates are now substantially higher) for an attorney with the same years of experience.

44.     Ms. Perry's rates are within the range and, if anything, lower than the rates awarded in cases discussed by Mr. Pearl's *Frayley* declaration, discussed above, in which he attested to court's awarding fees ranging from $460 and $550 per hour for attorneys with seven to twelve years of experience. *See* Exhibit 2. These rates are commensurate to what is requested here, but they were awarded several years ago. For example:

- In *Williams v. H&R Block Enterprises, Inc*., Alameda County Superior Ct. No. 3 RG08366506 (November 8, 2012), the court years ago approved billing rates of $445-475 an hour, i.e., rates essentially equal or higher than Ms. Perry's rate, for attorneys admitted to the bar in 2006, the same year as Ms. Perry.

- In *Charlebois v. Angels Baseball LP* (C.D. Cal. 2012) 2012 U.S. Dist. LEXIS 91069 (May 30, 2012), the court awarded a 2012 hourly rate of $460 for an attorney with seven years of experience and $450 for an attorney with six years of experience. Notably, these historic rates are equal to or higher than Ms. Perry's rate even though the attorneys in *Charlebois* had less experience than Ms. Perry.

- In *Molina, et al. v. Lexmark International, et al.*, Los Angeles County Superior Court No. BC339177, Order Granting Petitioners' Motion for Attorneys' Fees and Costs filed October 28, 2011, the court years ago approved a billing rate of $475 an hour for an attorney with nine years of experience, *i.e*., a rate higher than Ms. Perry's rate even though she has only one less year of experience.

- *Savaglio, et al. v. WalMart*, Alameda County Superior Court No. C-835687-7, Order Granting Class Counsel's Motion for Attorneys' Fees, filed September 10, 2010, the court found $500 an hour reasonable for an attorney with nine years of experience. Notably, this $500 per hour rate awarded several years ago is substantially above Ms. Perry's rate even though she has only one year less of experience.

45.    Pearl's *Fraley* Declaration supports its conclusions on attorneys rates not only by reference to case law, but also refers the billing rates of numerous California law firms (which run consistently higher than those requested here for similar years of experience) and the results of the Valeo 2012 Halftime Report, a yearly survey of legal billing rates. Again, the hourly rate for Ms. Perry is modest by comparison to those above given that she has equivalent or greater experience some of the attorneys' rates cited in Mr. Pearl's *Frayley* Declaration. For example, in *Credit/Debit Card Tying Cases*, San Francisco County Superior Court, JCCP No. 4335 (August 23, 2010), the court found that billing rates between $535 and $600 an hour were reasonable prevailing rates in 2010 for attorneys with nine years of experience. As those rates were approved five years ago and Ms. Perry currently has nine years of experience, with specific experience with complex environmental enforcement actions, Ms. Perry's hourly rate is well within the reasonable range of other attorneys practicing in San Francisco.

1        **E.    Justification for Environmental Advocates Paralegal Hourly Rate**

2  46.    Some of the work performed by attorneys on this case was in the nature of task performed by a

3  paralegal. I have billed all this time at the following paralegal rates: June 1, 2012 to May 31, 2014--$160

4  per hour and after June 1, 2014--$165 per hour.

5  47.    In setting these hourly rates, I have considered the applicable fee determinations discussed in

6  Richard Pearl's *Frayley* Declaration. According to Mr. Pearl's case citations, the average rate for

7  paralegals in 2011-2012 was $145 per hour.  I have increased this amount in subsequent years to

8  commensurate with attorney rate increases.

9  **II.    Explanation for Reasonableness of Total Hours in the Context of Case Development and**

10        **Outcome**

11  48.    Plaintiffs' counsel worked many hours on this case. In exercise of billing judgment, counsel are

12  only requesting an award for some of this time, a combined total of 822.62 billable hours. Attached as

13  Exhibit 1 is a true and correct copy of time records documenting the hours I have worked on this case

14  for which I am seeking to recover an attorney's fee award. These records reflect billing judgment

15  reductions from the total hours I have spent on this case. Attached as Exhibit 5 is a total lodestar

16  spreadsheet summarizing the total number of hours each attorney has billed on the case and the hourly

17  rate claimed for the attorneys' time, including a total amount of attorneys' fees for all attorneys.

18  49.    Devoting the hours necessary to represent the Plaintiffs in this has required me and other

19  Plaintiffs' counsel to forgo other cases where compensation may have been more quickly recovered. At

20  the outset, Environmental Advocates took this case with some hesitation, recognizing that due to its

21  factual and legal complexity and the likely resistance to settlement that the Plaintiffs could reasonably

22  expect to encounter, that the case would likely require long hours over a prolonged period without

23  compensation from the clients, who could only afford legal representation on a contingency basis.

24  50.    I have represented Plaintiffs OCE and ERF for over a decade in their work advocating for

25  stronger water quality protection in California as well as enforcing environmental laws related to

26  improving water quality and endangered species habitat. For example, I have worked with Plaintiffs to

27  lobby State agencies to push for more stringent application of the CWA in discharge permits, and I have

28  also represented Plaintiffs in suing dischargers to comply with the CWA, ESA, and other federal and

state environmental laws. Plaintiffs' goals in the matters I have worked with them on have been to improve water quality in California for their members and the public at large. In bringing this particular lawsuit asserting claims concerning EPA's failure to fully implement the RPMs set forth in the BiOp issued by NMFS and the USFWS, Plaintiffs' primary goal was to motivate EPA to revise California's CWA water quality standards that according to the Services are not adequately protective of threatened and endangered species throughout the State.

51.     Given the technical complexity surrounding EPA's proposal and issuance of the water quality standards in the CTR, it took Plaintiffs several months to fully understand the factual and legal implications of EPA's actions. This evidenced in part by the fact the CTR, a regulation that is constantly referred to and relied upon by state and federal agencies, regulated dischargers, and environmental organizations, has been missing complete selenium and mercury water quality standards since its passage without palpable awareness by stakeholders. In the numerous FOIA requests to EPA, NMFS, and the USFWS that Plaintiffs made throughout 2012, we were not provided any documents that suggested that state regulators or the public at large were either aware or questioning EPA's non-compliance with its duty to revise and promulgate the water quality standards as the BiOp directs. Plaintiffs thus determined that litigation was likely necessary to disrupt this ongoing bureaucratic inertia.

52.     From March 2012 to February 2013, Plaintiffs performed a variety of pre-litigation case development tasks. This included significant time spent gathering and analyzing factual information on the potential claims and remedies in the case, including extensive review of documents obtained via "FOIA requests from EPA, NMFS, and the USFWS. Because the pertinent facts relevant to Plaintiffs' claims in this case are necessarily documented in EPA's and the Services' administrative records underlying EPA's actions with respect to water quality standards for the State of California, adoption of the CTR, EPA consultation with the Services that led to the Services' issuance of the BiOp, this required Plaintiffs to review expansive sets of several agencies' documents that the agencies developed over nearly fourteen years and which included many thousands of pages. Further, due to the involvement of state regulatory agencies on the actions at issue in the Plaintiffs' claims, Plaintiffs also sent California Public Record Act Requests to the California State Water Resources Control Board, and San Francisco Regional Water Quality Control Board, which generated many additional documents to review. In

addition to reviewing documents to determine whether the Defendants were complying or intended to comply with the CWA and ESA and spending time in discussion with the agencies to narrow the scope of FOIA requests to allow the agencies to respond more efficiently, Plaintiffs also conducted independent extensive factual research on scientific issues related to the water quality criteria. Plaintiffs researched the continuing environmental impacts of the Defendants' actions, investigated issues regarding standing, conducted legal research and developed the legal theories of the case, and necessarily spent time evaluating with clients and co-counsel the merits of bring this case.  Plaintiffs ultimately spent considerable time drafting the Notice of Intent to Sue for claims under the CWA and ESA ("Notice Letter"), which was extensive due to the complex factual background of the case. This Notice Letter was a jurisdictional requirement for bringing suit specified in both the CWA and ESA.

53.     In February 2013, shortly after Plaintiffs served their Notice Letter, Defendant EPA reached out to Plaintiffs to discuss early settlement prior to the complaint being filed. Plaintiffs thus spent time in Spring 2013 conferring with EPA regarding the Notice Letter and planning in-person meeting with EPA staff to determine if early settlement was feasible. Plaintiffs were willing to settle to keep costs down, so long as their ultimate goal of stricter water quality standards would be implemented. In particular, Plaintiffs had several phone calls with EPA Region 9 counsel in February and March 2013, attended an in-person meetings on April 24, 2013, and exchanged several written communications in April and May 2013. After several months, the Defendants indicated that settlement was not forthcoming, and we were forced to spend considerable additional time drafting and then filing the complaint to initiate formal litigation to prompt EPA to address the claims at issue.

54.     Plaintiffs' complaint contained six claims, all based essentially on the same facts developed mostly from the agencies' administrative records involving the proposal of the CTR, the issuance of the BiOp, and EPA's subsequent actions. Claim 1 asserted a breach of an EPA mandatory CWA duty when EPA failed to issue final water quality standards for selenium and mercury 90 days after initially proposing them. As an alternate legal theory to this same underlying cause of action, Plaintiffs' Claim Six argued that the failure to act on selenium and mercury constituted "unreasonable delay" under the Administrative Procedure Act § 706(a)(1). Also posing alternate legal theories, Plaintiffs' ESA Claims (Claims 2-4) likewise alleged that EPA's failure to promulgate final standards for selenium and mercury

as well as revise the standards for cadmium, pentachlorophenol, and dissolved metals violated ESA § 9's prohibition on take, ESA § 7(a)(1)'s duty to implement conservation recommendations, and §7(a)(2)'s duty to reinitiate consultation. As a further strategic measure, Plaintiffs' brought an ESA Claim against the Services (Claim 5) for their failure to reinitiate ESA § 7 consultation with EPA following EPA's failure to comply with the BiOp's RPMs and the occurrence of other events triggering a mandatory duty to perform ESA § 7 consultation under the Services' regulations. Plaintiffs considered the Services as indispensable parties without whose involvement the overarching claims against EPA would not have been properly resolved. Indeed, Plaintiffs' addition of Claim 5 had the desired effect of having all of the federal agencies present at the ADR mediation session which helped developed the core timelines for water quality promulgation that are the essence of the Consent Decree.

55.     Filing the complaint in this action did not prompt any further immediate action from EPA or the Services; settlement talks remained stalled and the agencies appeared in no hurry to move the case forward to litigated resolution. To expedite the potential for settlement and narrow the claims at issue, Plaintiffs prepared a Motion for Partial Summary Judgment on Claim One, including Declarations in Support of Plaintiffs' Standing, in September 2013. The nature of the wrong Plaintiffs complained of was prolonged EPA inaction in the face of recognized urgent threats to endangered and threatened species, making Plaintiffs' early motion for summary judgment a case appropriate action in my view. Plaintiffs' counsel reasonably intended this motion (1) to provide Defendants' incentive to focus on this case and hopefully resume meaningful settlement dialog and (2) to keep the case moving toward prompt resolution should settlement discussions remain unsuccessful. This Motion prompted the Defendants to again pay attention to the issues in this case. Defendants requested that Plaintiffs' motion be stayed and so they could attempt to narrow the claims with their Motion to Dismiss. *Id*. More importantly, Defendants resumed substantive settlement discussions and mediation while their Motion to Dismiss remained filed but effectively stayed—providing the necessary backdrop for the parties to appreciate their respective litigation risks within the context of eventual litigation deadlines. Plaintiffs spent many hours in advance of filing these motions completing the factual and legal research necessary to present the arguments in these motions and preparing presentation of the extensive evidence submitted with these motions. While working on these motions, the parties also completed work required by Federal

Rule of Civil Procedure 26(f), conducting meet-and-confer efforts, and drafting the Rule 26(f) Report, which again required several hours of Plaintiffs' counsel's time-all reasonably compensable hours.

56. After the Motion to Dismiss was fully briefed, the parties agreed to mediation through the Northern District's ADR program, and the Court stayed the hearing pending the mediation with all the Defendants. *See* Dkt. 46, [Feb. 26, 2014]. Before the mediation, Plaintiffs met separately with the Services for extended discussion about the factual and legal issues raised by Plaintiffs' claims. This discussion provided useful information to Plaintiffs and how to approach further settlement discussions with the Defendants, and thus helped to advance and ultimately successful settlement outcome in the mediation and discussions following the mediation. Participating in mediation necessitated that Plaintiffs advocate for an appropriate mediator, prepare a mediation brief, inform and recommend settlement strategies to Plaintiffs' decision makers, attend a full day mediation session, and carry out numerous follow-up in-person and phone conferences with Defendants EPA, NMFS, and USFWS throughout the spring and summer of 2014. These meetings required preparation in the form of reviewing complex factual issues pertaining to the effects of the Defendants' actions on the environment as well as post-meeting debriefings to develop effective advocacy for settlement terms that would best address the impacts of EPA's failure to issue appropriately protective water quality criteria.

57. I sought to limit the number of hours spent and number of people involved in preparing this case to the extent possible to minimize the costs of litigation, while still being effective. While I always seek to do so in keeping with what I believe to be the ethical obligations of counsel to clients and the judicial process, I had special motivation to do so in this case. I and all my co-counsel representing Plaintiffs are working on contingency in this matter and thus our clients will not compensate us unless the Court awards the Plaintiffs attorney's fees. This gave me additional financial motivation to reduce the risks to my firm and my co-counsel by striving to keep the time invested in this case to that prudently necessary. It is notable that two attorneys did the majority of the work on this case: myself and Jodene Isaacs. Mike Costa has provided some assistance with legal research as well as contributed to case and settlement strategy, and Page Perry has contributed to Plaintiffs' Motion for Attorneys' Fees. I served as senior counsel, with responsibility for litigation strategy, supervision, court appearances, and other discrete assignments at various times throughout the case (such as drafting specific sections of briefs,  working

1  out FRCP 26 matters with opposing counsel, and drafting consent decrees and other settlement

2  proposals). Jodene Isaacs served as the mid-level associate on the case. With my supervision and

3  guidance, she has had primary responsibility for producing the briefs and other filings made in the case,

4  reviewing and analyzing the documents received via FOIA requests and from other sources to develop

5  the factual record in support of the claims asserted in the complaint and motions briefing, conducting

6  legal research assignments, and conferring with myself on case strategy. Page Perry is now a junior

7  associate on the case. She has had responsibility for conducting legal research at the direction of myself

8  and Jodene Isaacs, and drafting sections of this Motion for Attorneys' Fees and Costs and supporting

9  declarations.

10 **III.   Plaintiffs' Lodestar**

11 58.    As mentioned above, the attached Exhibit 5 compiles the timeslips that itemize the work

12 performed by myself, Jodene Isaacs, Michael Costa, and Page Perry in this case up through February 24,

13 2015 (additional attorney work that will inevitably be required to complete briefing on this Motion for

14 Attorneys Fees, including Plaintiffs' reply briefing, will be documented in subsequent declarations

15 submitted on reply). My own timeslips are attached to this Declaration as Exhibit 1; each individual

16 attorney's slips are exhibits to their individual Declarations. I have reviewed and approved the time and

17 charges set forth in this itemization of work.

18 59.    As set forth in Exhibit 5, the combined total number of hours expended by attorneys who

19 worked on this case is 822.62 hours. As also noted in Exhibit 5, some attorneys spent time

20 performing tasks that would be reasonably charged at a paralegal rate, 10.43 hours in total.

21 Therefore, I have applied a different billing rate to this paralegal time. The result is two sets of

22 hours: "attorney time," which includes only those hours for which the attorneys were performing

23 legal services appropriate for an attorney, and "paralegal time," which includes those hours for

24 which the attorneys were performing paralegal tasks. As described in Exhibit 5, I multiplied the total

25 "attorney time" by the attorney's hourly rate and the total "paralegal rate" by the reduced rate for

26 paralegals to arrive at the total lodestar for each attorney. As described in Section I above, these

27 lodestars are based on prevailing market rates for attorneys in the San Francisco Bay area.

28

60.     Plaintiffs total claimed lodestar through February 24, 2015 is $429,521.27. This is broken

down as follows: Christopher Sproul--$176,779.10; Jodene Isaacs--$165,737.52; Michael Costa--

$9,004.20, and Page Perry--$78,000.45. As noted, Plaintiffs will seek recovery for their additional

time that will necessarily be spent on this motion in their reply briefing in support of this motion.

**IV.     Support for Plaintiffs' Recovery of Costs**

61.     The Plaintiffs have incurred $4,059.60 in expenses in bringing this action that are of the type

ordinarily and necessarily incurred in litigation and typically billed of clients by their counsel: the

Court's filing fee to initiate this case; attorney travel to attend Court hearings; electronic legal research

using LEXIS-NEXIS; the costs of printing and photocopying documents filed with the Court, sent to the

Defendants, or needed by the lawyers to analyze and prepare factual and legal argument in the case;

postage to send documents to the Court, the Defendants, and co-counsel. Additionally, Plaintiffs

incurred $3,435 in costs in compensating their consulting expert Steven Bond. Mr. Bond's advice was

important and useful to the Plaintiffs in evaluating the technical issues presented in this case and

developing their final settlement proposals. Mr. Bond assisted the Plaintiffs in being able to present to

the Defendants their arguments in post-mediation settlement discussions as to why the EPA inaction in

issue was environmentally harmful and causing injury in fact to the Plaintiffs. I have attached as Exhibit

3 a spreadsheet which itemizes these costs. Receipts for these expenses are attached as Exhibit 4.

    Executed in San Francisco, California on February 26, 2015.

_____

Christopher Sproul
Environmental Advocates