UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OUR CHILDREN'S EARTH FOUNDATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>Defendants. | Case No. 13-cv-02857-JSW (KAW)<br><br>**REPORT AND RECOMMENDATION THAT PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS BE GRANTED IN PART AND DENIED IN PART**<br><br>Re: Dkt. No. 59 |

On February 26, 2015, Plaintiffs Our Children's Earth Foundation and Ecological Rights Foundation filed a motion for attorneys' fees and costs. (Pls.' Mot., Dkt. No. 59.)  Thereafter, the motion was referred to the undersigned for report and recommendation, and supplemental briefing was ordered.

On November 19, 2015, the Court held a hearing, and, taking into consideration the moving papers, supplemental briefing, and the arguments of the parties, and for the reasons set forth below, the Court recommends that Plaintiffs' motion be GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

**A. Statutory Background**

### i. The Clean Water Act ("CWA")

The Clean Water Act ("CWA") was enacted to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters" and to achieve "water quality which provides for the protection and propagation of fish, shellfish, and wildlife, and provides for recreation in and on the water." CWA § 101(a), (a)(2); 33 U.S.C. § 1251(a), (a)(2); *Envtl. Prot. Info. Ctr. v. Pac. Lumber Co.*, 301 F. Supp.2d 1102, 1105 (N.D. Cal. 2004) (The CWA

"establishes a comprehensive statutory system for controlling water pollution"). To accomplish these goals, the CWA requires every state to adopt, periodically update, and submit to EPA proposed Water Quality Standards ("WQS") applicable to waters in that state. *See* CWA § 303(a)-(c), 33 U.S.C. § 1313(a)-(c). WQS must include designated uses, i.e., the beneficial uses to which waters are put, and water quality criteria, i.e., the maximum levels of pollutants that a water body can have and still sustain designated uses. CWA § 303(c); 40 C.F.R. § 131.6; *see generally Pronsolino v. Nastri*, 291 F. 3d 1123, 1127 (9th Cir. 2002). Under Section 303(c)(2)(B), states must adopt numeric water quality criteria for the priority toxic pollutants listed under Section 307(a), 33 U.S.C. § 1317(a), if those pollutants could be reasonably expected to interfere with the designated uses of a state's waters. The CWA imposes strict deadlines for the EPA to approve or disapprove a state's proposed WQS, and further requires the EPA to commence adoption of its own standards if a state declines to revise and adopt its own standards within 90 days of EPA disapproval of the state's original WQS submittal. CWA § 303(c)(3). Whenever the EPA finds that there is a lapse in existing state WQS, the EPA can promulgate its own WQS when "necessary to meet the requirements of" the CWA. CWA § 303(c)(4). Whenever the EPA proposes its own WQS in lieu of a state standard, it must finalize its own standard within 90 days. *Id*.

The CWA authorizes citizens to bring suit against the EPA for failure to perform any nondiscretionary duty. CWA § 505(a)(2). Citizens may not bring suit until they have given 60 days' notice of their intent to sue to the alleged violator, as well as to the Administrator and the state in which the alleged violation occurs. 33 U.S.C. § 1365(b)(1)(A). The notice requirement serves two purposes: "to give [the alleged violator] an opportunity to bring itself into compliance with the Act and thus likewise render unnecessary a citizen suit." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 60, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). Prevailing citizens in actions to enforce the EPA's mandatory CWA duties may be awarded injunctions, declaratory relief, and attorney's fees and costs as appropriate. CWA § 505(a), (d); 33 U.S.C. § 1365(a), (d).

///

### ii. The Endangered Species Act ("ESA")

The ESA provides for the listing of imperiled plant and animal species as threatened or endangered. 16 U.S.C. § 1533. The Secretaries of Commerce and Interior share responsibility for implementing the ESA. The Secretary of Commerce has responsibility for listed marine species and administers the ESA through her designee, the National Marine Fisheries Service. The Secretary of Interior is responsible for listed terrestrial and inland fish species and administers the ESA through the Fish and Wildlife Services. *See* 16 U.S.C. § 1532(15); 50 C.F.R. §§ 17.11, 402.01(b).

Except under very limited circumstances, Section 9 of the ESA prohibits any person from "taking" a species listed as endangered or threatened. 16 U.S.C. § 1538(a)(1); 50 C.F.R. § 17.31. "Take" is defined as to "harass, harm, pursue, hurt, shoot, wound, kill, trap, capture, or collect or attempt to engage in any such conduct." 16 U.S.C. § 1532(19); *Babbitt v. Sweet Home Chapter of Communities for a Great Or.*, 515 U.S. 687, 704 (1995) (defining "take" in "the broadest possible manner to include every conceivable way in which a person can 'take' or attempt to 'take' any fish or wildlife.")

The ESA Section 9 prohibition applies to persons engaged in activities that are not intended or designed to take species listed under the ESA, but that may nevertheless take species incidentally. Incidental take of listed species that does not jeopardize the continued existence of that species may be authorized by the Secretary of the Interior (or Commerce) pursuant to an incidental take permit issued under Section 10 of the ESA, 16 U.S.C. § 1539, or an incidental take statement under section 7 of the ESA as set forth below. Take that is in compliance with the terms and conditions set forth in a Section 10 incidental take permit or a Section 7 incidental take statement is exempted from the Section 9 prohibition and is lawful.

Section 7 of the ESA directs each federal agency to insure, in consultation with the U.S. Fish and Wildlife Service ("FWS") or the National Marine Fisheries Service ("NMFS") (collectively "the Services"), that "any action authorized, funded, or carried out by such agency. . . is not likely to jeopardize the continued existence of" any listed species or destroy or adversely modify designated critical habitat. 16 U.S.C. § 1536(a)(2). If the agency proposing the relevant action ("action agency") determines that the action "may affect" listed species or critical habitat, the action agency must pursue

3

either informal or formal consultation with the consulting agency. 50 C.F.R. §§ 402.13-402.14. Formal consultation is required unless the action agency determines, with FWS's and/or NMFS's written concurrence, that the proposed action is "not likely to adversely affect" a listed species or critical habitat. *Id.* §§ 402.14(b)(1), 402.13(a). If formal consultation is required, the respective Services agency must prepare a "Biological Opinion" as to whether the proposed action is likely to "jeopardize the continued existence of" any listed species or destroy or adversely modify critical habitat. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14. If the answer to either of those questions is "yes," the Services must identify, if they can, "reasonable and prudent alternatives" to the proposed action that they believe will avoid jeopardizing the species or adversely modifying its critical habitat. *Id.* § 1536(b)(3).

If the taking of a listed species is expected to occur incidentally as a result of the proposed project, and the Services determine that such take does not jeopardize the continued existence of the species, an incidental take statement, as described above, must be part of the Biological Opinion. 16 U.S.C. § 1536(b)(4). Incidental take that results from the proposed action, if the action is undertaken in compliance with the incidental take statement, is lawful. 16 U.S.C. § 1536(o). The incidental take statement includes "those reasonable and prudent measures that the Secretary considers necessary or appropriate to minimize the impact" of the incidental takings. 16 U.S.C. § 1536(b)(4)(C).

After completion of the consultation, the action agency may be required to reinitiate consultation if the relevant action has not been completed, the action agency retains discretionary involvement or control over the action, and one of the following four triggers occurs:

> (a) If the amount or extent of taking specified in the incidental take statement is exceeded; (b) If new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered; (c) If the identified action is subsequently modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion; or (d) If a new species is listed or critical habitat designated that may be affected by the identified action.

50 C.F.R. § 402.16.

### iii. Administrative Procedures Act

The Administrative Procedure Act ("APA") provides district courts with jurisdiction to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), but only

4

where "there is no other adequate remedy in a court [] subject to judicial review." 5 U.S.C. § 704. Courts have consistently held that a statute-specific right of action, if it applies, preempts any relief under the APA for the same injury. *Bennett v. Spear*, 520 U.S. 154, 161-62 (1997); *see Or. Natural Res. Council v. United States Forest Serv.*, 834 F.2d 842, 851 (9th Cir. 1987) ("Where plaintiffs may otherwise proceed under the citizen suit provision [of the Clean Water Act], they should not . . . resort to . . . the APA").

### B. Statement of Facts

In April 1991, California adopted the water quality criteria component of WQS for priority toxic pollutants pursuant to CWA § 303(c), which were invalidated by a state court in 1994. Due to California's inability to reenact WQS in a timely manner, the EPA intervened and proposed the California Toxics Rule ("CTR") on August 5, 1997, which would set water quality criteria for toxic priority pollutants in California's waters. EPA determined that the CTR promulgation was necessary for California to meet the requirements under Section 303(c)(2)(B) of the Clean Water Act.

California state agencies responsible for administering California's CWA water quality program needed the CTR to establish water quality-based effluent limitations in National Pollutant Discharge Elimination System permits, devising CWA § 303(d) lists of waters too polluted in the State to meet CWA standards, adopting Total Maximum Daily Loads, and performing their water quality planning required by the CWA.

The Services objected to EPA's 1997 proposed CTR, finding its water quality criteria insufficiently protective of California's endangered and threatened species. EPA and the Services engaged in an extensive ESA § 7 consultation on the proposed CTR, which resulted in the Services issuing a Biological Opinion on March 24, 2000 ("the BiOp"). The BiOp analyzed the adverse impacts of several pollutants to be regulated under the CTR (including mercury, selenium, pentachlorophenol, cadmium, and other toxic metals) on various endangered and threatened species found in specific California waters. The BiOp concluded that the EPA needed to revise the CTR's water quality criteria to protect endangered and threatened species, and required the EPA to:

> (1) propose new water quality criteria for selenium and mercury by January 2003 and finalize these criteria no later than 18 months after proposal; (2) reinitiate ESA § 7 consultation if EPA failed to revise water quality criteria for these pollutants by these deadlines; (3) and work with the Services in various ways to identify waters adversely impacted by these and other pollutants and reduce the levels of these pollutants in waters inhabited by ESA-listed species.

(Pls.' Mot. at 6.) The BiOp identified these EPA obligations as reasonable and prudent measures pursuant to § 7(b)(4) of the Endangered Species Act ("ESA") that EPA had to implement to enjoy the BiOp's safe harbor from ESA § 9's prohibition on taking ESA-listed species.

EPA issued the final CTR on May 18, 2000. *See* 65 Fed. Reg. 31682 (May 18, 2000). In the CTR proposed in 1997, the EPA included both freshwater and saltwater criteria maximum concentrations ("CMC") and criteria continuous concentrations ("CCC") for mercury and a freshwater CMC for selenium, but the EPA omitted these criteria from its final CTR. *Id.* The EPA indicated that it planned to enact these mercury and selenium criteria at a later date. *Id.* at 31689-90, 3169. They did not, so California is without statewide criteria for these pollutant parameters.

Beginning in 2012, Plaintiffs sent a series of public records requests, through the Freedom of Information Act ("FOIA") regarding EPA's consultation with Services regarding CTR. In February 2013, Plaintiffs sent a series of Notices of Intent to Sue ("NOI"). The NOIs included discussion on the reasonably prudent measures for selenium, mercury, pentachlorophenol, cadmium, and dissolved metals, compliance with conservation recommendations found in the BiOp, and EPA's review of National Pollutant Discharge Elimination System permits. The NOIs concluded that the EPA was in violation of the CWA and ESA.

Upon receipt of Plaintiffs' NOIs, the EPA and the Services engaged in substantive discussions with Plaintiffs, but, despite these efforts, they were unable to reach a settlement.

On June 20, 2013, Plaintiffs filed a complaint for declaratory and injunctive relief for violations of Section 505(a)(2) of the Clean Water Act ("CWA"), 33 U.S.C. § 1365(a)(2), Section 11(g) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g)(1)(A), and Section 706(1) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), against the U.S. Environmental Protection Agency ("EPA"), the U.S. Fish and Wildlife Service, and the National Marine Fisheries Service (collectively "the Services"), and certain federal officials of all three agencies. (Compl.,

Dkt. No. 1.)

Specifically, the Complaint includes six claims alleging specifically that: (1) EPA failed to perform a non-discretionary duty to set water quality criteria for selenium and mercury for the State of California as required by CWA Section 303(c)(4), 33 U.S.C. § 1313(c)(4); (2) EPA violated ESA Section 9, 16 U.S.C. § 1538(a)(1)(B), by failing to adopt certain CWA Section 303(c) criteria for selenium, mercury, pentachlorophenol ("PCP"), cadmium and dissolved metals as envisioned in the ESA biological opinion; (3) EPA violated ESA Sections 7(a)(1) and 7(a)(2), 16 U.S.C. § 1536(a)(1) and (2), by failing to carry out certain conservation programs and reasonable and prudent measures contained in the ESA biological opinion; (4) EPA violated ESA Section 7(a)(2), 16 U.S.C. § 1536(a)(2), by failing to reinitiate consultation; (5) the Services violated ESA Section 7(a)(2), 16 U.S.C. § 1536(a)(2), by failing to reinitiate consultation; and (6) EPA violated the APA, 5 U.S.C. § 706(1), by failing to promulgate the selenium and mercury water quality criteria.

On September 2, 2013, and before Defendants had a filed responsive pleading, Plaintiffs filed a motion for partial summary judgment. On September 23, 2015, the district court granted the parties' stipulation to stay the motion. On September 30, 2015, Defendants filed a motion to dismiss.

Thereafter, the parties engaged in mediation, and, on April 16, 2014, the motion to dismiss was stayed so that the parties could continue their settlement negotiations.

On May 1, 2014, Plaintiffs voluntarily dismissed Claim Five and the Wildlife Agency Defendants. (Dkt. No. 50.)

On July 7, 2014, the district court stayed all proceedings until August 18, 2015, because the parties had agreed to settlement terms for a consent decree. On August 22, 2015, the parties filed the proposed consent decree.

On August 25, 2014, the district court approved the Consent Decree, in which the parties agreed that the EPA would propose certain selenium criteria by November 30, 2016, and certain mercury criteria by June 30, 2017. (Consent Decree, Dkt. No. 55 ¶¶ 3-4. 9-10, 14, 16.) The Consent Decree further provided that "[t]he Parties agree that Plaintiffs are entitled to reasonable

attorneys' fees and costs accrued as of the Effective Date of this Consent Decree on the First Claim of the Complaint." (Consent Decree ¶ 24.) Upon entry of the Consent Decree, the remaining claims (Claims Two, Three, Four, and Six) were dismissed. (Consent Decree ¶ 28.)

By the terms of the Consent Decree, the parties were required to meet and confer regarding Plaintiffs' recovery of reasonable attorneys' fees and costs, but were unable to reach an agreement. (*See* Consent Decree ¶ 24.)

On February 26, 2015, Plaintiffs filed a motion for attorneys' fees and costs. (Pls.' Mot., Dkt. No. 59.) The motion was referred to the undersigned for report and recommendation. (Dkt. No. 60.) The parties stipulated to an extended briefing schedule, and Defendants filed their opposition on April 28, 2015. (Defs.' Opp'n, Dkt. No. 68.) Plaintiffs filed their reply on May 11, 2015. (Pls.' Reply, Dkt. No. 69.) On May 20, 2015, the Court struck the Reply Declaration of Christopher Sproul on the grounds that it was argumentative, and ordered that an amended declaration be filed, and that it provide timekeeping records and summaries of work performed in a format that would facilitate the Court's resolution of this matter. (Dkt. No. 70.) On June 10, 2015, Plaintiffs filed the Amended Reply Declaration of Christopher Sproul. (Am. Decl. of Christopher Sproul in Support of Plaintiffs' Reply, "Am. Sproul Reply Decl.," Dkt. No. 73.) The Court permitted Defendants to file a surreply, which was filed on July 6, 2015. (Defs.' Surreply, Dkt. No. 75.)

On November 19, 2015, the Court held a hearing on the motion for attorneys' fees and costs at which all parties appeared. At the hearing, the Court asked Plaintiffs to lodge an electronic version of their billing records to assist in its review of the fee application.

## II.   LEGAL STANDARD

Pursuant to section 505(d) the Clean Water Act, 33 U.S.C. § 1365(d) the court may award, if "appropriate," "reasonable attorney and expert witness fees" to "any prevailing or substantially prevailing party." The CWA's fee-shifting provision is a waiver of sovereign immunity and as such, it "must be strictly construed in favor of the United States." *Ardestani v. INS*, 502 U.S. 129, 137 (1991) (discussing a fee-shifting provision under the Equal Access to Justice Act); s*ee Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 n.1 (1983) (discussing a similar fee-shifting provision in the Clean Air

8

1  Act and noting that the Court's interpretation applies to the "identical" provision in the Clean Water
2  Act); *Avoyelles Sportsmen's League v. Marsh*, 786 F.2d 631, 634 (5th Cir. 1986) (considering Section
3  505(d) of the Clean Water Act).

4        In *Hensley v. Eckerhart,* the Supreme Court set forth the process that a district court must
5  follow when determining whether fee awards are reasonable in cases where the prevailing party is
6  only partially successful on all its claims. 461 U.S. 424, 433 (1983); *Natural Resources Defense
7  Council, Inc. v. Winter,* 543 F.3d 1152 (9th Cir. 2008). Under *Hensley,* "[t]he ... starting point for
8  determining the amount of a reasonable fee" is the lodestar figure, which equals the "number of
9  hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 461 U.S. at
10 433. Where the plaintiff has only achieved limited success on their claims, however, the "district
11 court has discretion to make a downward adjustment to the components or the product of" the
12 lodestar equation. *Schwarz v. Sec'y of Health & Human Serv.,* 73 F.3d 895, 901 (9th Cir. 1995);
13 *see also Sierra Club v. Johnson*, No. C 08-01409 WHA, 2010 WL 147951, at *3 (N.D. Cal. Jan.
14 12, 2010).

15       Exercising this discretion requires a two-part analysis. First, the court asks whether the
16 claims upon which the plaintiff failed to prevail "were related to the plaintiff's successful claims."
17 *Schwarz*, 73 F.3d 895, 901 (9th Cir. 1995). If unrelated, the court must "exclude from the
18 calculation . . . all hours spent litigating the unsuccessful claims." *Id.* at 904. In *Hensley,* the
19 Supreme Court recognized that "there is no certain method of determining when claims are
20 'related' or 'unrelated,' " but that courts have identified several indicia of relatedness. 461 U.S. at
21 437 n. 12. As an example, claims are unrelated if they are "distinctly different claims for relief
22 that are based on different facts and legal theories." *Id.* at 434. In other words, "claims are
23 unrelated when the relief sought on the unsuccessful claim 'is intended to remedy a course of
24 conduct entirely distinct and separate from the course of conduct that gave rise to the injury on
25 which the relief granted is premised.' " *Community Ass'n for Restoration of the Environment v.
26 Henry Bosma Dairy,* 305 F.3d 943, 956 (9th Cir. 2002) (quoting *Thorne v. City of El Segundo,* 802
27 F.2d 1131, 1141 (9th Cir. 1986)). On the other hand, claims may be related if they "involve a
28 common core of facts or are based on related legal theories." *Thomas v. City of Tacoma,* 410 F.3d

9

644, 649 (9th Cir. 2005) (internal quotations omitted).  Thus, "even if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of other claims." *Commnity Ass'n,* 305 F.3d at 956 (quoting *Cabrales v. County of Los Angeles,* 935 F.2d 1050, 1052 (9th Cir.1991)).

Second, even if the claims are found to be related, the court may modify the award in light of the degree of success obtained. *Schwarz*, 73 F.3d at 901-902. Here, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. While making this determination, the district court must "provide a . . . clear explanation of its reasons for the fee award" to enable for meaningful appellate review. *Id.* at 437; *see also Schwarz*, 73 F.3d at 906.

### III.    DISCUSSION

#### A.    Prevailing Party

The parties agree that Plaintiffs are entitled to reasonable attorneys' fees and costs accrued as of the effective date of the Consent Decree on Claim One. (Consent Decree ¶ 24.)  The parties could not, however, reach an agreement on the amount of fees and costs, thereby necessitating the instant motion. *See id.*

##### i.    Impact of Paragraph 24

Defendant interprets Paragraph 24 to limit fees and costs to Claim One. (Def.'s Opp'n at 11.)  Plaintiffs advance a broader interpretation of Paragraph 24, which is that they can recover for additional fees beyond those accrued through the Consent Decree's Effective Date through the addition of the paragraph's concluding sentence: "Payment of fees and costs pursuant to this paragraph shall constitute payment in full of any fees and costs to which Plaintiffs may be entitled in this action through the date of payment of such fees and costs." (Pls.' Reply 1-2.)

Plaintiffs' interpretation would require the Court to construe the first sentence as enforceable only if the parties agreed on the "appropriate amount of the recovery."  In this regard, Plaintiffs' are mistaken.  Rather, the last sentence in Paragraph 24 does not contemplate that additional fees may be earned after the Effective Date.  Specifically, it states that the fees and costs paid pursuant to Paragraph 24 shall constitute all the fees and costs Plaintiffs may be entitled

to in this action. This both restricts Plaintiffs' prevailing party status to Claim One and limits Plaintiffs' potential recovery to those fees accrued as of August 25, 2014, the Effective Date of the Consent Decree.[1] Further, while Paragraph 24 contemplated that the parties may not agree on the appropriate amount of recovery—in that it outlines terms regarding the filing of a motion for attorneys' fees— it still limited the recoverable fees and costs to those incurred by the Effective Date. Indeed, any language that would permit recovery of attorneys' fees and costs for work performed after the Effective Date is noticeably absent.

At the hearing, Plaintiffs argued that *Muckleshoot Tribe v. Puget Sound Power & Light Co.*, 875 F.2d 695, 698 (9th Cir. 1989), requires Plaintiffs to have expressly waived their right to attorneys' fees accrued after the effective date. This is too broad of an interpretation, as *Muckleshoot Tribe* only requires that a party expressly waive her right to all fees and costs if the parties are bearing their own costs as part of a settlement. *Id.* at 698. Here, the Consent Decree explicitly states that Plaintiffs are entitled to reasonable attorneys' fees and costs accrued as of the effective date. Plaintiffs are not required to expressly waive fees and costs that may have accrued thereafter.

Accordingly, the Court finds that, pursuant to the Consent Decree, Plaintiffs are the prevailing party only as to Claim One and are not entitled to any fees or costs incurred after August 25, 2014.

### ii. Whether Claim One is related to the other claims

Plaintiffs contend that the bulk of the time was spent on Claim One, and that they successfully obtained at least part of the substantive relief sought for the remaining claims. (Pls.' Reply at 5.) For example, Plaintiffs "sought an injunction ordering EPA and the Services to complete a new ESA § 7 consultation," and the Consent Decree requires this consultation within a specified timeframe. (Pls.' Reply at 6.)

---

[1] The Court notes that Defendants do not advance this argument. Instead, Defendants acknowledge that the Consent Decree contemplates that fees may be recoverable for work performed after the Effective Date, but fail to specify when that would occur. (*See, e.g.,* Defs.' Surreply at 2 n. 2.) At the hearing, Defendants clarified that the agreement contemplated that fees could be awarded for enforcement of the Consent Decree.

Defendants contend that the successful CWA claim is not related to the unsuccessful ESA claims, citing Plaintiffs' portrayal of the CWA claim as being "quite simple" and the ESA claims as being "considerably more involved." (Defs.' Surreply at 6, citing Joint Case Management Conference Statement, Dkt. No. 24 at 3.) Further, Defendants cite Plaintiffs' request in their partial motion for summary judgment, in which they asked the Court to adjudicate the CWA claim first. (Defs.' Surreply at 6, citing Partial Mot. for Summary J. at 21-24.)

In the Ninth Circuit, "claims are unrelated when the relief sought on the unsuccessful claim 'is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised.'" *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 956 (9th Cir. 2002) (quoting *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir.1986)). Here, the ESA claims concerned the BiOp, which provided formal guidance concerning the actions EPA needed to take to fulfill its duties under ESA, including issuing WQS that were safe for endangered and threatened species. For example, Claim Two specifically concerns the failure of the EPA to adopt CWA § 303(c) criteria for selenium, mercury, and other metals, and alleges that it causes the taking of listed species, and habitat and behavior modification in violation of the ESA. (Compl. ¶ 66.) Claims Three and Four are not as clearly related, but there is some crossover in that the BiOp addressed whether water quality standards were safe for endangered and threatened species. Presumably, the conservation programs sought in Claim Three and the reinstatement of the consultation sought in Claim Four related to the water quality issues raised in Claims One and Two. Further, Plaintiffs acknowledged that little time was spent on Claims Three and Four. (*See* Am. Decl. of Christopher Sproul in support of Pls.' Reply, "Am. Sproul Reply Decl.," Dkt. No. 73, Ex. 3.)

Claim Five, however, is against the Services, which was dismissed on May 1, 2014. Claim Six was the APA claim for the CWA violation, which was not viable, because the CWA violation was subject to judicial review.

Notwithstanding, while the Consent Decree provides that Plaintiffs are only entitled to reasonable attorneys' fees and costs on the First Claim, it is difficult to separate Claim One from Claims Two, Three and Four, because the remedies sought for the ESA violations are related to

the actions EPA must take to finalize the mercury and selenium WQS.  Accordingly, Plaintiffs may recover reasonable attorneys' fees for time spent on Claims One through Four.

### B. Reasonable Fees

Prevailing party status does not entitle Plaintiffs to all of the fees incurred during the entire litigation. The Consent Decree provides that Plaintiffs are only entitled to reasonable attorneys' fees and costs accrued as August 25, 2014 on Claim One.

#### iii. Reasonable Hours

In order to assess whether the number of hours billed is reasonable, Plaintiffs must submit detailed records justifying the hours that have been expended. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986).  The court may reduce the hours through its discretion "where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Id.*

Here, at the time the initial motion was filed, Plaintiffs' counsel billed for a total of 822.62 hours. (Decl. of Christopher Sproul in support of Pls.' Mot. for Att'ys' Fees, "Sproul Decl.," Dkt. No. 59-1 ¶ 59.)  As of June 10, 2015, the hours billed totaled 899.433, including 353.203[2] hours on the motion for attorneys' fees. (Am. Sproul Reply Decl., Ex. 4.)  Despite having spent over 300 hours on the motion for attorneys' fees, including additional briefing ordered by the undersigned, Plaintiffs did not provide billing information in a format that would permit the Court to parse out the work performed.  For example, there is no meaningful calculation of work performed on the FOIA requests, and the undersigned is left to scour the record to determine whether the requests were related to Claim One.  As a result, at the hearing, the Court asked Plaintiffs to provide an electronic version of the spreadsheet in Exhibit 2 of the Amended Sproul Declaration filed in support of Plaintiffs' reply brief to assist the Court in determining the reasonableness of the hours billed.  Even electronically, the billing records proved too onerous for the Court to fully assess, because Plaintiffs' records are not divided into specific tasks.  Notwithstanding, "in cases where a

---

[2] Exhibits 2 and 4 to the Amended Sproul Reply Declaration are contradictory. Exhibit 2 claims a total of 353.203 hours, while Exhibit 4 claims a total of 352.753 hours. The Court will assume, for the purposes of this motion, that the correct number of hours is 353.203, as that figure was corroborated by the Excel spreadsheet furnished by Plaintiffs after the hearing.

voluminous fee application is filed, in exercising its billing judgment, the district court is not required to set forth an hour-by-hour analysis of the fee request." *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992). Instead, "the district court has the authority to make across-the-board percentage cuts . . . in the number of hours claimed . . . as a practical means of trimming the fat from a fee application." *In re Smith*, 586 F.3d 1169, 1174 (9th Cir. 2009)(citing *Gates*, 987 F.2d at 1399)(internal quotations omitted).

      a.   <u>Fees accrued after August 25, 2014</u>

After a voluntary cut, Plaintiffs seek reasonable attorneys' fees for 376.963[3] hours billed after the Consent Decree became effective on August 25, 2014, including 353.203 hours for the time spent on the motion for attorneys' fees. (*See* Am. Sproul Reply Decl., Ex. 2.) As discussed above, Plaintiffs' assertion that Paragraph 24 contemplates the recovery of attorneys' fees and costs incurred after the Effective Date is incorrect. *See* discussion *supra* Part III.A.i. To the contrary, terms expressly limit recovery to those fees and costs accrued as of the Effective Date. (Consent Decree ¶ 24.) If the parties wanted to permit for the recovery of fees and costs incurred after the Effective Date, such terms should have been expressly included in the Consent Decree.

Accordingly, the Court recommends that no fees or costs be awarded for the 376.963 hours billed after August 25, 2014, including the time spent on the instant motion.[4] The Court finds that the 1.62 hours billed on August 25, 2014, however, are reasonable.

      b.   <u>Pre-filing work</u>

Plaintiffs claim to have spent 243.7 hours in pre-filing work performed between March 21, 2012 and June 19, 2013. (Am. Sproul Reply Decl., Ex. 2.) This presumably includes the notice letters, FOIA requests, other investigation, settlement negotiations, and drafting and filing the complaint. (*See* Am. Sproul Reply Decl. ¶ 22.) Plaintiffs retrospectively apportion 77% of their time to the CWA theory. (Am. Sproul Reply Decl. ¶ 23.) Of the five FOIA requests, however,

---

[3] This number does not include the two entries billed on August 25, 2014, which total 1.62 hours. (*See* Am. Sproul Reply Decl., Ex. 1 at 29).
[4] Since the Consent Decree does not explicitly provide for the recovery of fees incurred in relation to the instant motion, the Court need not address in detail whether the hours billed in connection with the motion for attorneys' fees and costs were reasonable. That said, at first blush, the number of hours billed in connection with the instant motion appear to be excessive.

14

only one concerns the adoption of revised water quality criteria for selenium and mercury. (FOIA Request, Defs.' Surreply, Ex. 3 at 2.)

Similarly, it is difficult to determine how many hours were spent drafting the complaint. Nevertheless, Plaintiffs retrospectively apportion 66% of their time to drafting the CWA claim in the complaint. (Am. Sproul Reply Decl. ¶ 23.) The complaint, however, contained five distinct claims, as Claim Six simply reframed Claim One as an APA claim. Since the fee application is both voluminous and the billing records do not lend themselves to an hour-by-hour analysis, the Court will instead employ an across-the-board percentage cut after deducting those fees that are clearly unreasonable. *See In re Smith*, 586 F.3d at 1174.

      c. <u>Work performed after the filing of the complaint to the filing of the consent decree</u>

Plaintiffs seek reasonable attorneys' fees for 277.1467 hours billed for work performed between June 19, 2013 and August 22, 2014. (Am. Sproul Reply Decl., Ex. 2.)

      1. Motion for Partial Summary Judgment

The billing records indicate that Plaintiffs billed 88.86 hours between July 23, 2013 and September 26, 2013 in connection with their motion for partial summary judgment. (Am. Sproul Reply Decl., Ex. 1 at 25-33.) Specifically, Christopher Sproul billed 41.38 hours, Jodene Isaacs billed 43.13 hours, and Michael Costa billed 4.35 hours.

Plaintiffs argue that the motion was filed "after Defendants continued to stall settlement discussions as a necessary step to keep the case progressing" and to promote resolution by either court order or settlement. (Pl.'s Mot. at 17.) Defendants contend that none of these hours were reasonable, because "Plaintiffs were aware that Defendants had no intention of challenging standing and that EPA could not factually contest that it failed to promulgate certain criteria after proposing them in the 1997 CTR. (Defs.' Opp'n at 19.) Further, the motion was both filed without the parties first meeting and conferring and before the filing of a responsive pleading. *Id.* Indeed, any decision on the motion was stayed and was never ruled upon due to settlement negotiations and a pending motion to dismiss.

Plaintiffs' contention that the motion was necessary to encourage Defendants to pursue

1  settlement is unavailing.  The pleadings were not settled.  In fact, Defendants filed a motion to

2  dismiss several of the claims that were later dismissed in accordance with the Consent Decree.

3  Accordingly, the Court recommends that no fees be awarded in connection with the premature

4  motion for summary judgment.

2.  Other work performed

6  After deducting the hours performed in connection with the motion for summary judgment,

7  Plaintiffs billed 188.2867 hours through August 22, 2014. (Am. Sproul Reply Decl., Ex. 1 at 25-

8  33, Ex. 2.)  Of those, Christopher Sproul billed 90.25 hours, Jodene Isaacs billed 82.39 hours, and

9  Michael Costa billed 10.5 hours at the attorney rate and 4.2 hours at the paralegal rate. *See ids.*

10  A cursory review of Plaintiffs' billing records indicates that some of the billing is

11  unreasonable. (*See* Am. Sproul Reply Decl., Ex. A.) For example, on September 7, 2013, Mr.

12  Sproul billed 5.23 hours for drafting the joint case management conference statement. (Am.

13  Sproul Reply Decl., Ex. A at 31.)  Not including that time entry, billing records from Mr. Sproul

14  and Ms. Isaacs in the following two weeks for the same statement amounted to an additional 4.95

15  hours. *Id.* at 31-33. While the joint case management conference statement was robust, it is

16  unreasonable to bill ten hours in connection with this task.  Five hours is reasonable.

17  Additionally, Plaintiffs billed time for certain paralegal tasks that were administrative in

18  nature, while also claiming costs.  For example, on July 2, 2013, Michael Costa billed 1.6 hours

19  performing "paralegal tasks" of printing and preparing service via U.S. Mail for the Clerk's Notice

20  of Impending Reassignment (Dkt. No. 5), Clerk's Notice of Reassignment (Dkt. No. 7), and the

21  Initial Scheduling Conference Order (Dkt. No. 9). (Am. Sproul Reply Decl., Ex. A at 24.)  Mr.

22  Costa also charged $7.99 for the printing and postage costs associated with those tasks. (Sproul

23  Decl., Ex. 3 at 2.)  Based on the billing records, however, Mr. Costa included those same

24  documents when the Complaint was served on July 18, 2013, in which he billed 2.6 hours. (Am.

25  Sproul Reply Decl., Ex. A at 25.)  At the very least, 1.6 hours billed at the paralegal rate of $160

26  per was duplicative.  Moreover, time billed for administrative tasks are not recoverable as

27  attorneys' fees.  The costs incurred for copying and mailing, however, are recoverable. *See*

28  discussion *infra* Part III.E.  Thus, the 4.2 hours billed by Mr. Costa at the paralegal rate are not

16

recoverable, and the Court recommends that no fees be awarded for paralegal work performed by Mr. Costa during this time period.

In light of the foregoing, and deducting 5.18 hours of Mr. Sproul's time and 4.2 hours of Mr. Costa's paralegal work, the undersigned finds that 178.91 hours of billable time during the time period, prior to any downward adjustment, are potentially recoverable.

### iv. Reasonable Billing Rate

To determine the appropriate lodestar amount, the reasonableness of the hourly billing rate must be assessed. *Credit Managers Ass'n of S. Cal.*, 25 F.3d at 750. In doing so, the court must look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Generally, the relevant community is the forum where the district court sits. *Id.*

Here, Plaintiffs' claimed hourly rates at Environmental Advocates range from $435.00 to $655.00 per hour for attorneys, and $160.00 per hour for paralegals. (Am. Sproul Reply Decl., Ex. 2.) Christopher A. Sproul is the firm's managing partner and his practice focuses on environmental litigation. (Sproul Decl. ¶ 7.) Mr. Sproul has 27 years of experience as an attorney, including 15 years as an Assistant Regional Counsel for EPA. (Sproul Decl. ¶ 9.) Mr. Sproul's time was billed at $600.00 per hour in 2011-2012, $615.00 per hour in 2012-2013, $625.00 per hour in 2013-2014, and $655.00 per hour in 2014-2015. (Am. Sproul Reply Decl., Ex. 2.) These rates are reasonable.

Jodene Isaacs is a partner in the firm and her practice focuses on environmental litigation. (Decl. of Jodene Isaacs, "Isaacs Decl.," Dkt. No. 59-6 ¶ 3.) Ms. Isaacs has over 11 years of experience as an attorney, which has been spent at the firm. *Id.* Ms. Isaac's time was billed at $435.00 per hour in 2011-2012, $460.00 per hour in 2012-2013, $500.00 per hour in 2013-2014, and $520.00 per hour in 2014-2015. (Am. Sproul Reply Decl., Ex. 2.) These rates are reasonable.

Michael Costa is a solo practitioner specializing in the enforcement of the Clean Water Act and the Clean Air Act. (Decl. of Michael Costa, "Costa Decl.," Dkt. No. 59-12 ¶ 4.) Mr. Costa previously served as lead in-house counsel at Our Children's Earth Foundation, and has over 13 years of experience as an attorney. (Costa Decl. ¶ 4.) Mr. Costa's time was billed at $495.00 per

hour in 2012-2013, $505.00 per hour in 2013-2014, and $525.00 per hour in 2014-2015. (Am. Sproul Reply Decl., Ex. 2.) The "paralegal work" he performed was billed at a rate of $160.00 per hour. *Id.* These rates are reasonable.

### v. Downward Adjustment

As provided above, the Consent Decree limits Plaintiffs' recovery of reasonable attorneys' fees to the time spent prosecuting Claim One, and the related claims. Defendants' characterization of Claim One as a "straightforward mandatory duty suit" for failure to timely promulgate WQS is too simplistic. (*See* Defs.' Opp'n at 13.) Rather, the time spent on the CWA claim is not easily severed from the ESA claims. For example, Plaintiffs' FOIA requests could have potentially garnered additional evidence that could have been utilized. That they did not, and that Plaintiffs relied on the Federal Register Notices to support the CWA claim in the motion for partial summary judgment, does not mean that those efforts were unreasonable.

At the hearing, Defendants argued that Plaintiffs failed to divide their time by claims as required by *Hensley*. While Plaintiffs admitted that any apportionment by legal theory was done retrospectively, they contend that 49.53% of their time was spent on the CWA theory, 5.64% on the ESA substantive violation, 5.61% on the ESA procedural violation, and 39.22% on the motion for attorneys' fees. (Am. Sproul Reply Decl., Ex. 4.) A retroactive analysis of time purportedly spent on a specific claim is not instructive, particularly when the billing records do not clearly support apportionment and the court has already reduced the number of hours reasonably expended. *See* discussion *supra* Parts III.B.ii.a, III.B.ii.c. Instead, the undersigned recommends a downward adjustment of 25% to account for the unclear billing records, the overlap between Claim One and Claims Two, Three, and Four, the dismissal of Claim Five, and the fact that Claim Six was not viable. Accordingly, the undersigned recommends that the district court apply a downward adjustment of 25%, and award attorneys' fees as set forth below:

///

///

///

///

| | Attorney | Hours | Billing Rate | Gross Lodestar | Downward Adjustment | Final Lodestar |
|---|---|---|---|---|---|---|
| Prefiling work (3/12/12-6/19/13) | **Sproul** | 11.1 | $600 *(2011-12)* | $6,660.00 | 25% | $4,995.00 |
| | | 72.47 | $615 *(2012-13)* | $44,569.05 | 25% | $33,426.79 |
| | | 4.84 | $625 *(2013-14)* | $3,025.00 | 25% | $2,268.75 |
| | **Isaacs** | 39.23 | $435 *(2011-12)* | $17,065.05 | 25% | $12,798.79 |
| | | 112.92 | $460 *(2012-13)* | $51,943.20 | 25% | $38,957.40 |
| | | 0.89 | $500 *(2013-14)* | $445.00 | 25% | $333.75 |
| | **Costa** | 0.28 | $495 *(2012-13)* | $138.60 | 25% | $103.95 |
| | | 0.17 | $505 *(2013-14)* | $85.85 | 25% | $64.39 |
| | | 1.8 | $160 *(paralegal)* | $288.00 | 25% | $216.00 |
| Work performed between filing of the complaint and Consent Decree (6/20/13-8/22/14) [Adjusted] | **Sproul** | 85.07 | $625 *(2013-14)* | $53,168.75 | 25% | $39,876.56 |
| | | 0.5 | $655 *(2014-15)* | $327.50 | 25% | $245.63 |
| | **Isaacs** | 82.39 | $500 *(2013-14)* | $41,195.00 | 25% | $30,896.25 |
| | | 0.45 | $520 *(2014-15)* | $234.00 | 25% | $175.50 |
| | **Costa** | 10.5 | $505 *(2013-14)* | $5,302.50 | 25% | $3,976.88 |
| | | 0 | $160 *(paralegal)* | $0.00 | 25% | $0.00 |
| Work performed between 8/23-25/14 | **Sproul** | 1.62 | $655 *(2014-15)* | $1,061.10 | 25% | $795.83 |
| **Totals** | | **424.23** | | **$225,508.60** | | **$169,131.45** |

In light of the downward adjustment, the court recommends that Plaintiffs be awarded $169,130.21 in reasonable attorneys' fees.

**C. Costs**

Plaintiffs seek $7,494.60 in costs, which includes an expert report, legal research, printing and postage. (Sproul Decl., Ex. 3.) Defendants only object to the $3,435.00 for the expert report from Steve Bond, and do so on the grounds that "he was not a testifying expert and his work expressly concerned dissolved metals, related to Plaintiffs' dismissed claims." (Defs.' Opp'n at 20.) They do not object to the other $4,059.60 in accrued costs. (*See* Defs.' Opp'n at 23.)

Plaintiffs hired Steve Bond, a water quality expert, to assist with a technical discussion with EPA held in the spring of 2014. (Am. Sproul Reply Decl. ¶ 14.) Specifically, Mr. Bond was engaged to explain a complex formula-based methodology referred to in the CTR for devising permit limits for the ten different metals, including selenium and mercury. *Id.* The BiOp, issued on the CTR by the Services, expressed concern that the methodology could lead permit writers to

set improper effluent limitations in discharge permits that addressed all these metals. *Id.* Plaintiffs contend that Mr. Bond's advice was integral to determining whether the settlement terms offered by EPA were reasonably environmentally protective in light of the BiOp's expressed concerns. *Id.*

Defendants argue that Section 1365(d) only permits Courts to award "reasonable attorney and expert witness fees." (Defs.' Opp'n at 20-21.) Plaintiffs contend that Mr. Bond's fees are recoverable as attorneys' fees as part of a lodestar award, because he assisted counsel with technical issues germane to this case. (Pls.' Reply at 14; Am. Sproul Decl. ¶ 14.) While this may be true, Plaintiffs are attempting to recover Mr. Bond's fees as part of their costs, so the Court declines to recommend that Defendants pay for the expert report.

Accordingly, the undersigned recommends that Plaintiffs be awarded $4,059.60 in costs.

## IV.   CONCLUSION

For the reasons set forth above, the undersigned recommends that Plaintiffs recover $169,130.21 in attorneys' fees and $4,059.60 in costs.

Any party may file objections to this report and recommendation with the District Judge within 14 days of being served with a copy. *See* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b); N.D. Civil L.R. 72-3. The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order. *IBEW Local 595 Trust Funds v. ACS Controls Corp.*, No. C-10-5568, 2011 WL 1496056, at *3 (N.D. Cal. Apr. 20, 2011).

IT IS SO RECOMMENDED.

Dated: January 21, 2016

KANDIS A. WESTMORE
United States Magistrate Judge