UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OUR CHILDREN'S EARTH FOUNDATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>Defendants. | Case No. 13-cv-02857-JSW<br><br>**ORDER ON MOTIONS FOR DE NOVO DETERMINATION OF REPORT AND RECOMMENDATION ON MOTION FOR ATTORNEYS' FEES**<br><br>Re: Docket Nos. 59, 82, 88, 89 |

On January 21, 2016, Magistrate Judge Westmore issued a report and recommendation (the "Report"), in which she recommended that this Court grant, in part, and deny, in part, the motion for attorneys' fees filed by Plaintiffs. On February 4, 2016, Plaintiffs and Defendants each filed motions for de novo review of the Report. The Court has reviewed the parties' papers, relevant legal authority, and the record in this case.[1] For the reasons set forth herein, the Court adopts, in part, and rejects, in part, the Report, grants, in part, and denies, in part, Plaintiffs' motion, and denies Defendants' motion.

## BACKGROUND[2]

On June 20, 2013, Plaintiffs filed the Complaint in this action, in which they asserted six

---

[1] Plaintiffs object to an exhibit Defendants submitted with their reply brief, a color-coded version of Plaintiffs' timeslips. The Court concludes that a sur-reply is not required, because the Court did not rely on that exhibit to resolve these motions. (*See* Docket Nos. 96-98.)

[2] The Report contains a thorough description of the Clean Water Act ("CWA"), the Endangered Species Act ("ESA"), and the Administrative Procedures Act ("APA"), the statutes on which Plaintiffs' claims were based. The Report also contains a thorough recitation of the facts underlying the dispute and the procedural history of briefing on the motion for attorneys' fees. (*See* Report at 1:21-8:21.) The parties do not object to these sections of the Report. The Court adopts those sections in full, and it repeats only those facts that are necessary to its ruling on the pending motions.

1

claims for relief: (1) the Environmental Protection Agency ("EPA") Defendants failed to perform a non-discretionary duty to set water quality criteria for selenium and mercury for the State of California, as required by CWA Section 303(c)(4), 33 U.S.C. 1313(c)(4) ("Claim One"); (2) the EPA Defendants violated ESA section 9, 16 U.S.C. section 1538(a)(1)(B), by failing to adopt certain CWA Section 303(c) criteria for selenium, mercury, pentachlorophenal ("PCP"), cadmium and dissolved metals as envisioned in a Biological Opinion ("BiOP") issued by the Services Defendants ("Claim Two"); (3) the EPA Defendants violated ESA Sections 7(a)(1) and 7(a)(2), 16 U.S.C. sections 1536(a)(1)-(2), by failing to carry out certain conservation programs and reasonable and prudent measures contained in the BiOP ("Claim Three"); (4) the EPA Defendants violated ESA Section 7(a)(2), 16 U.S.C. section 1536(a)(2), by failing to reinitiate consultation ("Claim Four"); (5) the Services Defendants violated ESA Section 7(a)(2), 16 U.S.C. section 1536(a)(2), by failing to reinitiate consultation ("Claim Five"); and (6) the EPA Defendants violated the APA, 5 U.S.C. section 706(1), by failing to promulgate the selenium and mercury water quality criteria ("Claim Six"). (Docket No. 1, Complaint ¶¶ 60-95.)

On August 25, 2014, the Court entered a Consent Decree, which resolved this matter. (Docket No. 55, Consent Decree.) In brief, the Consent Decree required the EPA to propose selenium criteria for the "Rest of California" by November 30, 2016, and provided that the "EPA shall request initiation of any necessary ESA Section 7(a)(2) consultation with the Services on the proposed Selenium Criteria for the Rest of California no later than nine (9) months after the date EPA proposes the criteria." (Consent Decree, ¶¶ 14, 16; *see also id.* ¶¶ 15, 17-19.) The parties agreed to similar relief with respect to mercury criteria, albeit on different deadlines. (*Id.* ¶¶ 20-23.) The parties also agreed to dismiss Claims Two through Four and Claim Six on various terms, and confirmed that "Plaintiffs voluntarily dismissed" Claim Five on May 1, 2014. (*Id.*, Recitals at pp. 1-2 and ¶ 28.)

The parties also agreed that:

> *Plaintiffs are entitled to reasonable attorneys' fees and costs accrued as of the Effective Date of this Consent Decree on the First Claim of the Complaint.* The parties will attempt to reach agreement as to the appropriate amount of recovery. If the Parties are unable to reach agreement after following the informal dispute resolution

> process in Paragraph 34, Plaintiffs shall file with the Court any request for attorney's fees no earlier than ninety days (90) after the Effective Date of this Consent Decree.  EPA shall have forty-five (45) days to file its response to Plaintiffs' fee request.  Payment of fees and costs pursuant to this paragraph shall constitute payment in full of any fees and costs to which Plaintiffs may be entitled in this action through the date of payment of such fees and costs.

(Consent Decree, ¶ 24 (emphasis added).)

Plaintiffs requested $496,450.19 in attorneys' fees, which included fees incurred up May 11, 2015, the date Plaintiffs filed their reply in support of the motion for attorneys' fees.  The Magistrate Judge recommended that the Court grant the request for fees but recommended that the request be reduced to $169,130.21.[3]

The Court shall address additional facts as necessary in the analysis.

**ANALYSIS**

**A.    Applicable Legal Standards.**

A district court may modify or set aside any portion of a magistrate's ruling on non-dispositive pre-trial motions found to be "clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a); *see also Grimes v. City and County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).  A ruling is clearly erroneous if the reviewing court, after considering the evidence, is left with the "definite and firm conviction that a mistake has been committed."  *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

Plaintiffs object to the findings that they are not entitled to fees-on-fees, that Claims Five

---

[3]   Plaintiffs argued that they were entitled to fees under CWA Section 505(d), 33 U.S.C. section 1365(d).  In the alternative, Plaintiffs argued that they were entitled to fees under ESA Section 11, 16 U.S.C. section 1540(g)(4).  The Report refers only to the fee-shifting provision of the CWA, which is considered a waiver of sovereign immunity and must be "strictly construed in the United States' favor."  *Ardestani v. INS*, 502 U.S. 129, 137 (1991); *see also Ruckelshaus v. Sierra Club*, 463 U.S. 680, 658 n.1 (1983).  Although it does not appear that the Magistrate Judge recommended that fees be awarded under the ESA, that provision also is considered a waiver of sovereign immunity and is to be strictly construed in the United States' favor.  *See, e.g., South Yuba River Citizens League and Friends of the River v. National Marine Fisheries Serv.*, No. Civ. S-06-2845 LKK/JFM, 2012 WL 1038131, at *2 (E.D. Cal. Mar. 27, 2012), *aff'd* 581 Fed. Appx. 693 (9th Cir. 2014) ("*South Yuba River*").

and Six are not related to Claim One, and to the finding that the fees should be reduced.

Defendants object to the finding that Plaintiffs could recover fees incurred for work performed on Claims Two through Four and to the finding that Plaintiffs' billing rates are reasonable. Defendants also argue that the fees awarded are excessive.

**B.     The Court Concludes Plaintiffs Are Entitled to "Fees-on-Fees."**

The parties agreed that "Plaintiffs are entitled to reasonable attorneys' fees and costs accrued as of the Effective Date of this Consent Decree on the First Claim of the Complaint." (Consent Decree, ¶ 24.) "In statutory fee cases, federal courts, …, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) (quoting *In re Nucorp Energy, Inc.*, 764 F.2d 655, 659-60 (9th Cir. 1985). Plaintiffs object to the finding that they are not entitled to any fees incurred after the Effective Date of the Consent Decree, including fees-on-fees.

The Consent Decree is a form of contract, and it "is construed with reference to ordinary contract principles of the state in which the decree is signed." *Gates v. Gomez*, 60 F.3d 525, 530 (9th Cir. 1995) (hereinafter "*Gomez*") (citing *Gates v. Rowland*, 39 F.3d 1439, 1444 (9th Cir. 1994) (hereinafter "*Rowland*")). Under California law, "contracts are interpreted using an objective test to give effect to the mutual intention of the parties as it existed at the time the contract was made." *Gomez*, 60 F.3d at 530; *see also Santisas v. Goodin*, 17 Cal. 4th 599, 608 (1998) ("Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation.") "The clear and explicit meaning of these provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage, controls judicial interpretation." *Santisas*, 17 Cal. 4th at 599; *accord Gomez*, 60 F.3d at 530 (citing *Rowland*, 39 F.3d at 1444).

The first sentence of Paragraph 24 does not use any language that clearly limits Plaintiffs' recovery to fees they had accrued as of the Effective Date, such as "only" or "exclusively." In addition, the first sentence of Paragraph 24 concludes with the clause "on the First Claim of the Complaint." It is reasonable to interpret that sentence to impose a time limitation on fees for work done on the merits of Claim One, and to mean that Plaintiffs could seek fees for work done for

4

1  other reasons after the Effective Date.

2      Although Defendants do not raise a waiver argument with respect to fees-on-fees,
3  Paragraph 24 also does not include any language that would expressly suggest Plaintiffs waived
4  the right to cover fees incurred after the Effective Date. *See, e.g., Evans v. Jeff D.*, 475 U.S. 717,
5  737-38 (1986) (holding a party may waive fees as part of settlement process). Paragraphs 28
6  through 30, which set forth the provisions of release, also do not contain clear and unambiguous
7  language of waiver. *See, e.g., Muckleshoot Tribe v. Puget Sound Power and Light Co.*, 875 F.2d
8  695, 698 (9th Cir. 1989) (holding that waiver of fees must be clear); *Wakefield v. Mathews*, 852
9  F.2d 482, 483-84 (9th Cir. 1988) (concluding plaintiffs waived right to recover attorneys' fees
10 based on breadth of the release). Finally, at the hearing on the motion, the Defendants agreed that
11 Paragraph 24 was not intended to preclude Plaintiffs from recovering fees-on-fees. (Docket No.
12 86-1, Transcript of Hearing at 8:8-22.) That statement of the parties' intent further supports this
13 Court's conclusion that Paragraph 24 cannot be construed to preclude Plaintiffs from recovering
14 fees-on-fees.

15     Accordingly, the Court rejects, in part, the Report's finding that Plaintiffs are limited to
16 recovering fees incurred up the Effective Date, and it grants, in part, Plaintiffs' motion on that
17 basis. The Court addresses whether the fees incurred in connection with the motion for attorneys'
18 fees are reasonable in Section D.2, *infra*.

19 **C.  Recovery for Fees on Unsuccessful Claims.**

20     Under the CWA a "prevailing party" may recover attorneys' fees. The Supreme Court has
21 held that, in some circumstances, a party may be entitled to recover attorneys' fees on
22 unsuccessful claims, *i.e.* when that party prevails in part. *Hensley v. Eckerhart*, 461 U.S. 437,
23 433-35 (1983). "[A] claim may be deemed unsuccessful under *Hensley* once it has been dismissed
24 by the plaintiff or by the court, regardless of whether the dismissal would have been upheld on
25 appeal, and regardless of whether the dismissal is based on legal or factual inadequacy." *Schwarz*
26 *v. Secretary of Health & Human Servs.*, 73 F.3d 895, 902 (9th Cir. 1995).

27     The Report includes a finding that Plaintiffs are prevailing parties only on Claim One.
28 (Report at 8:16-17.) The parties agreed that "Plaintiffs are entitled to reasonable attorneys' fees

1    and costs accrued as of the Effective Date of this Consent Decree on the First Claim of the

2    Complaint." (Consent Decree ¶ 24.)  Thus, the parties agreed that Plaintiffs are prevailing parties,

3    *at least* as to Claim One.  Plaintiffs voluntarily dismissed Claim Five, before they entered into the

4    Consent Decree and agreed to dismiss Claims Two through Six as part of the Consent Decree.

5    (*See* Docket No. 50, Stipulated Dismissal of Wildlife Agencies; Docket No. 54, Order Approving

6    Stipulation to Vacate Hearing and Request to Enter Consent Decree at 2:12-14; Consent Decree at

7    p. 2.)

8    Because Plaintiffs agreed to dismiss Claims Two through Six, the Court concludes that

9    the Report's finding that Plaintiffs are prevailing parties only as to Claim One is neither clearly

10   erroneous nor contrary to law, and it adopts that finding.  *See Schwarz*, 73 F.3d at 902.

11        **1.     Waiver.**

12   Defendants object to the Report's finding that Plaintiffs are entitled to recover fees for

13   work performed on Claims Two through Four.  Under *Hensley*, Plaintiffs could be entitled to

14   recover fees on the unsuccessful claims, unless they waived that right.  Defendants argue that the

15   first sentence of Paragraph 24, combined with the dismissal of the other claims demonstrates that

16   Plaintiffs gave up that right in order to resolve the case by way of the Consent Decree.  In the

17   Ninth Circuit, a waiver of attorneys' fees must be clear.  *Muckleshoot Tribe*, 875 F.2d at 698; *see*

18   *also Fitzgerald v. City of Los Angeles*, No. CV 03-01876 DDP (RZx), 2009 WL 960825, *4 (C.D.

19   Cal. April 7, 2009).  If language is "unclear or ambiguous, surrounding circumstances may clearly

20   manifest the intent of the parties that attorneys' fees be waived." *Muckleshoot Tribe*, 875 F.2d at

21   698.

22   Defendants' interpretation of the first sentence of Paragraph 24 is reasonable.  However, as

23   discussed above, there is an equally plausible interpretation of that sentence.  In addition, the first

24   sentence of Paragraph 24 does not include any express language that Plaintiffs waived the right to

25   recover fees on any other claims, and the releases in Paragraphs 28 through 30 also do not clearly

26   support a finding of waiver.  For example, in *Wakefield*, the plaintiffs "released defendants from:

27   any and all manner of action or actions,… *costs or expenses of any nature whatsoever, known or*

28   *unknown, fixed or contingent* …, which [plaintiffs] now [have] or may hereafter have against each

6

1  or any of the [defendants] arising out of, or what might be considered to arise out of or in any way
2  connected with the aforementioned lawsuit or the conduct of [defendants] to date." 852 F.2d at
3  483 (emphasis and brackets in original). In contrast, Paragraphs 29 and 30 of the Consent Decree
4  includes release language that is expressly related to Claims One and Six. Although Paragraph 30
5  does make reference to the ESA, the release refers only to "any and all, claims, causes of actions,
6  suits or demands of any kind," and does not include language like the language used in *Wakefield*,
7  where the plaintiffs also released the defendants from any "costs or expenses." 852 F.2d at 483.
8  Looking to the plain language of the Consent Decree, the Court finds Defendants have not shown
9  Plaintiffs clearly waived the right to recover fees on unsuccessful claims.

The Court also considers the surrounding circumstances. Unlike in the *Mucklshoot Tribe* case, where there was some evidence in the record to show that certain language had been dropped from the settlement agreement, Defendants do not provide any extrinsic evidence to demonstrate the parties' intent. *Muckleshoot Tribe*, 875 F.2d at 699; *see also Fitzgerald*, 2009 WL *6 (finding no waiver where defendant did not present evidence that its reading of ambiguous language reflected intent of the parties).

Accordingly, the Court finds Defendants have not met their burden to show Plaintiffs waived the right to recover fees on unsuccessful claims, and it denies, in part, their motion on that basis.

### 2. Relatedness.

The Report includes a finding that Claims Two through Four are related to Claim One and that Claims Five and Six are not related to Claim One. Plaintiffs object to the latter finding. In *Hensley*, the Supreme Court set forth a two-part test to be applied "in those cases in which a plaintiff's success is limited." *Schwarz*, 73 F.3d at 901.

> First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims. If the unsuccessful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. If the plaintiff obtained excellent results, full compensation *may* be appropriate, but if only partial or "limited

7

success" was obtained, full compensation may be excessive.

*Id.* at 901-02 (internal quotations omitted, emphasis added); *see also Sierra Club v. Johnson,* No. 08-cv-01409-WHA, 2010 WL 147951, at *7 (N.D. Cal. Jan. 12, 2010) ("A finding that an unsuccessful claim was related to a successful claim does not automatically entitle the prevailing party to a full award.").

"[C]laims are related when the relief sought on the unsuccessful claim 'is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised.'" *Community Ass'n for Restoration of the Evnironment v. Henry Bomsa Dairy*, 305 F.3d 943, 956 (9th Cir. 2002) (quoting *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986)). Related claims may "involve a common core of facts" *or* may be "based on related legal theories." *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003). The *Webb* court made clear that the test for relatedness is disjunctive and that "commonality of both facts *and* law" is not required to find "that unsuccessful and successful claims are related." *Id.* (emphasis in original). Ultimately, the Court should consider "whether the unsuccessful and successful claims arose out of the same course of conduct." *Schwarz*, 73 F.3d at 903 (internal quotation marks omitted).

The Report correctly summarizes these principles, and the parties do not object on the basis that the Magistrate Judge relied on an incorrect legal standard. Defendants argue that Claims Two through Six are distinct, factually and legally, from Claim One, and support their argument by citing to the fact that Plaintiffs stated that Claim One was "quite simple," compared to Claims Two through Five. (*See, e.g.,* Report at 12:1-3.) Having carefully considered the Defendants' objections and the record, the Court concludes that Claims Two through Four arise out of the same course of conduct as Claim One. The Court concludes that the Report's finding on that issue is neither clearly erroneous nor contrary to law, adopts the Report's finding on that issue, and denies, in part, Defendants' motion on that basis.

With respect to Claim Five and Claim Six, the fact that these claims were dismissed demonstrates that Plaintiffs were not the prevailing parties on those claims. However, that fact is

8

not dispositive of whether they could be considered related under *Hensley* and its progeny. The Court concludes that those two claims satisfy the Ninth Circuit's test for relatedness to Claim One. For example, although Claim Six was premised on the APA, rather than the CWA or the ESA, the facts underlying that claim were the same basic facts that give rise to the CWA claim. Although Claim Five was asserted against the Services, that claim also arose out of the same basic course of conduct which gives rise to each of the preceding claims. Therefore, the Court rejects, in part, the Report's finding on that issue, and it grants, in part, Plaintiffs' motion on that basis. The Court will take into account Plaintiffs' limited success on those claims in the second step of the *Hensley* analysis, *i.e.* whether full compensation is appropriate.

**D. Calculation of Fees.**

Plaintiffs object to the reduced fee award on the basis that it is arbitrary and fails to consider the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).[4] Defendants object to the recommendation that Plaintiffs' billing rates are reasonable, and they also contend that the fees should be reduced even further. The starting point of the Court's analysis is the lodestar figure, *i.e.* the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The Court may increase or decrease the lodestar figure based on other considerations, "including the important factor of the 'results obtained.'" *Id.* at 434; *see also Schwarz*, 73 F.3d at 901; *Kerr*, 526 F.2d at 70.

**1. Billing Rates**

Defendants object to the finding that Plaintiffs' billing rates are reasonable. When a court examines a motion for attorneys' fees, it must consider whether the moving party has met its burden to show that counsel's hourly rates are reasonable within the "relevant community." *Camacho*, 523 F.3d at 979-80 (party seeking fees must "produce satisfactory evidence – in

---

[4] The *Kerr* factors are "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr*, 526 F.2d at 70.

9

1    addition to the attorney's own affidavits – that the requested rates are in line with those prevailing
2    in the community for similar services by lawyers of reasonably comparable skill, experience, and
3    reputation"); *accord Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986)
4    (discussing award of fees under Section 1983). In this case, the relevant community is the
5    Northern District of California.

6    The Ninth Circuit has recognized that "determining an appropriate 'market rate' for the
7    services of a lawyer is inherently difficult." *Camacho*, 523 F. 3d at 979 (quoting *Blum v. Stenson*,
8    465 U.S. 886, 895 n.11 (1984)). The Court should examine the "'rate prevailing in the community
9    for similar work performed by attorneys of comparable skill, experience, and reputation.'" *Id.*
10   (quoting *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997)). The Court may rely on its own
11   knowledge and familiarity with the legal market in setting a reasonable hourly rate. *Ingram v.
12   Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). In addition, "[a]ffidavits of the plaintiffs' attorney
13   and other attorneys regarding prevailing fees in the community, and rate determinations in other
14   cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the
15   prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403,
16   407 (9th Cir. 1990).

17   Here, Plaintiffs provided declarations that detailed their experience, stated that the starting
18   point for their fees were rates approved in the *South Yuba River* case, *supra*, and also included a
19   discussion of cases approving rates for counsel with similar years of experience. (*See generally*
20   Docket No. 59-1, Declaration of Christopher Sproul ("Sproul Decl."), ¶¶ 5-21, Ex. 6; Docket No.
21   59-8, Declaration of Jodene Isaacs ("Isaacs Decl."), ¶¶ 2-6; Docket No. 59-12, Declaration of
22   Michael Costa ("Costa Decl."), ¶¶ 2-4; Docket No. 59-14, Declaration of Page Perry ("Perry
23   Decl."), ¶¶ 2-7.) Plaintiffs' did not base their request for fees solely upon an attorney's current
24   billing rate. Rather, counsel based their rates based on their experience at the time they performed
25   any given task. *See, e.g., South Yuba River*, 2012 WL 1038131, at *6.

26   The Court concludes that the finding that Plaintiffs' billing rates are reasonable is neither
27   clearly erroneous nor contrary to law. Accordingly, it adopts the Report's finding on that issue,
28   and denies, in part, Defendants' motion on that basis.

### 2. Amount of Fees.

Both parties object to the amount of fees awarded to Plaintiffs. Because the Court finds that Plaintiffs are entitled to fees-on-fees, the Court rejects the recommendation that Plaintiffs only be awarded $169,130.21 in fees, and it grants, in part, Plaintiffs' motion on that basis. The Court does not find persuasive Defendants' argument that the award should be reduced even further, and it denies, in part, their motion on that basis.

Plaintiffs object to the reduced fee award on the basis that the explanation for the reduction is not sufficient to support more than a "haircut" of ten (10) percent to the overall fees. A court "can impose a small reduction, no greater than 10 percent – a 'haircut' – based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). When a court imposes a more substantial cut, a more substantial explanation is required. *Id.*; *see also South Yuba River*, 2012 WL 1038131, at *5 (applying reduction of twenty (20) percent to fee request and explaining reasons for reduction). The Court finds the Report provides clear and concise reasons to justify a twenty-five (25) percent reduction to the lodestar. *Gates v. Deukmajian,* 987 F.2d 1392, 1399 (9th Cir. 1992) (hereinafter *"Deukmajian"*).

In the *Deukmajian* case, the court stated that, in cases involving "voluminous" fee applications, "the district court is not required to set forth an hour-by-hour analysis of the fee request" to exercise its billing judgment. *Deukmajian,* 987 F.2d at 1399; *see also South Yuba River,* 2012 WL 1038131, *2. In this case, the Plaintiffs' timeslips covered a three-year period and were substantial, especially as to the hours expended by Mr. Sproul and Ms. Isaacs.

The Report also clearly and concisely explains that the reduced fee award was intended to account for "unclear billing records, the overlap between Claim One and Claims Two, Three, and Four, the dismissal of Claim Five, and the fact that Claim Six was not viable." (Report at 18:20-23.) The Report includes a more detailed discussion of those issues in the analysis of whether the claims were related and in the preliminary assessment of the reasonableness of the hours incurred. (*Id.* at 12:7-14:6.) The Report also provides an explanation that it found the number of hours

11

expended on certain tasks to be unreasonable. (*Id.* at 14:19-17:5.)

Plaintiffs also argue that the decision to reduce their fees is legally erroneous, because the Report neither cites to *Kerr* nor explicitly references the *Kerr* factors. However, the Report states that "Defendants' characterization of [the CWA claim] as a 'straightforward mandatory duty suit' for failure to timely promulgate [water quality standards] was "too simplistic." (Report at 18:7-8.) Thus, the Report implicitly recognized and acknowledged that at least some of the issues were, if not novel, difficult. *Kerr*, 526 F.2d at 70. The Report's finding that Plaintiffs were entitled to recover some fees on claims that were unsuccessful, but related to Claim One, takes into consideration the "results obtained." *Id.* The Report also discusses the experience of counsel in its analysis of the reasonable billing rates. *Id.*

The Court concludes that the Report includes sufficient reasons to justify a reduction beyond a "haircut" of ten (10) percent, and it denies, in part, Plaintiffs' motion on that basis. The Court agrees that that this is not a case where the Plaintiffs should obtain a "fully compensatory fee." *Hensley,* 461 U.S. 343, 435. Therefore, the Court adopts the Report's recommendation that the Court reduce the fees from the lodestar figure. For the reasons that follow, the Court finds that a twenty-five (25) percent reduction is appropriate.

One of the *Kerr* factors to consider when a court evaluates a request for fees, is whether a party was precluded from taking other employment by accepting a case. *Kerr,* 526 F.2d at 70. Mr. Sproul attested that Plaintiffs' counsel were required to "forgo other cases where compensation may have been more quickly recovered," because of the work done on this case. (Sproul Decl., ¶ 49.) That factor does weigh in Plaintiffs' favor, and the Court has considered it, as well as counsel's experience to determine the appropriate reduction to the lodestar.

The Court finds that a twenty-five (25) percent reduction is justified, in part, by the fact that although Claim Six may have been "related" to Claim One within the meaning of *Hensley*, even Plaintiffs do not press the argument that it had merit in light of Claim One. Thus, Claim Six does not appear to have contributed to the level of success or the relief Plaintiffs achieved. The Court concludes that the same is true for Claim Five.

In addition, the Court agrees with the Report's finding that the timeslips are unclear.

12

1  Although in some instances the timeslips refer to particular claims, in large part, the entries refer
2  to "claim development" or refer generally to the CWA and ESA without delineating the time spent
3  on the CSA claim or on any particular ESA claim.  The Supreme Court in *Hensley* acknowledged
4  that "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it
5  difficult to divide the hours expended on a claim-by-claim basis." 461 U.S. at 435.  However, it
6  also "cautioned" that "an attorney 'should maintain billing time records that will enable a
7  reviewing court to identify distinct claims.'" *Schwarz*, 73 F.3d at 906 (quoting *Hensley*, 461 U.S.
8  at 437).  In *Schwarz*, the Ninth Circuit also stated that it would not "'view with sympathy any
9  claim that a district court abused its discretion in awarding an unreasonably low attorneys' fee in a
10 suit in which plaintiffs were only partially successful if counsel's records do not provide a proper
11 basis for determining how much time was spent on particular claims." *Id.* (quoting *Hensley*, 461
12 U.S. at 437 n.12 (in turn quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 279 (1st Cir. 1978)).
13 Because Plaintiffs did not clearly account for time incurred on Claims Five and Six in the billing
14 records, the Court cannot engage in a line-item reduction for fees expended on those claims.

15     With respect to Plaintiffs' motion for summary judgment, the Court cannot say all of the
16 work done on that motion was unnecessary.[5]  Thus, it rejects the recommendation that all hours
17 worked on that motion be excluded from the fee award.  However, the Court's decision to impose
18 a twenty-five (25) percent reduction to the lodestar is based, in part, on the fact that the motion
19 was never litigated.

20     In addition, Plaintiffs' timeslips demonstrate that counsel billed a large amount of time
21 spent on phone conferences with each other.  This is not a case where one attorney could have
22 performed all of the work, and it is not unreasonable for counsel to communicate with one another
23 during the course of litigation.  However, the Court does find that the "practice of billing for each

---

[5] Defendants argue that Plaintiffs violated this Court's standing orders regarding motions for summary judgment when they filed their motion.  This Court's Civil Standing Orders provide that, "[a]bsent a showing of good cause, the Court will address only one motion for summary judgment per side."  Civil Standing Orders ¶ 9.  Plaintiffs did not violate that Standing Order by seeking an early ruling on standing and on Claim One.  Rather, they ran the risk that the Court would not permit them to file a subsequent motion for summary judgment on other issues or other claims.

1   attorney present at a conference" and billing for each attorney's time on a phone conference
2   supports the Court's decision to impose a twenty-five (25) percent reduction to the lodestar figure.
3   *See, e.g., South Yuba River*, 2012 WL 1038131, at *5.

4   The Court also has carefully reviewed the timeslips relating to the fees-on-fees.
5   According to Plaintiffs' calculations, approximately thirty-nine (39%) percent of all of the hours
6   billed in this litigation related to work on their entitlement to fees, including preliminary
7   settlement discussions with Defendants. (Docket No. 73, Amended Reply Declaration of
8   Christopher Sproul ("Sproul Am. Reply Decl."), Ex. 4.) Plaintiffs voluntarily reduced, by thirty-
9   one (31) percent, the fees billed by Ms. Perry on the fee motion. However, even when the Court
10  considers those deductions, both Mr. Sproul and Ms. Isaacs also billed large chunks of time for
11  researching, drafting, and revising that motion and the supporting declarations. (*See, e.g.,* Sproul
12  Am. Reply Decl.", ¶ 9; Sproul Decl. Ex. 2 at pp. 25-27; Issacs Decl., Ex. 2 at pp. 22-24.)
13  Although there were a number of issues in dispute regarding Plaintiffs right to fees, the Court
14  finds that the number of hours expended on the fee motion is excessive.

15  "[A] district court does not abuse its discretion by applying the same percentage of merits
16  fees ultimately recovered to determine the proper amount of fees-on-fees award." *Schwarz*, 73
17  F.3d at 909 (having provided explanation for why reduction is appropriate as to the merits, the
18  court is "not required to repeat [that] explanation to facilitate a meaningful appellate review"). For
19  the reasons set forth above, the Court also concludes that a twenty-five (25) percent reduction is
20  warranted in connection with fees-on-fees.

21  Accordingly, the Court awards Plaintiffs $356,421.29 in attorneys' fees.

22  **E.   The Court Adopts the Recommendation as to the Award of Costs.**

23  The parties do not object to the recommendation that Plaintiffs be awarded costs in the
24  amount of $4,059.60 and the recommendation that costs associated with an expert report be
25  denied. The Court finds that portion of the Report to be well-reasoned and adopts it in full.

26  **CONCLUSION**

27  For the foregoing reasons the Court: (1) adopts, in part, and rejects, in part, the Report; (2)
28  grants, in part, and denies, in part, Plaintiffs' motion for *de novo* review; and (3) denies

Defendants' motion for *de novo* review.  The Court awards Plaintiffs attorneys' fees in the amount of $356,421.29, and costs in the amount of $4,059.60.

**IT IS SO ORDERED.**

Dated: March 25, 2016

JEFFREY S. WHITE
United States District Judge